## Spelman vs. The Fisher Iron Company.

Where, in an action brought against a corporation by one of its laborers employed in blasting, for an injury occasioned by the premature discharge of a blast, loaded with a newly invented powder, which he was directed to use by the defendant's foreman or superintendent, the complaint alleged that the company furnished the powder for use in its ordinary and appropriate business; that its superintendent directed its use by the plaintiff, in such business; that it had never been used as an explosive, in blasting, and was, in fact, unfit and unsafe for such use; and that the plaintiff was ignorant of its dangerous properties; *Held*, on demurrer, that a right of action was unquestionably stated.

*Held, also,* that the risk of personal injury in blasting with the ordinary appliances used for that purpose, the plaintiff assumed, under his contract with the company, to labor in that employment; but not those risks attendant upon the use of an unusual, untested and exceedingly dangerous article which could not be tamped without inevitable explosion; the dangerous quality of which was unknown to him.

That it was gross negligence in the company to furnish such an article for the laborer's use, without giving him information in that particular; whether the company was aware of its dangerous quality, or furnished it for use without having taken any steps to obtain such knowledge.

Where the complaint averred that H. was the managing agent and superintendent of the company; that the powder for blasting was furnished by the company through him; and that he furnished the same to the plaintiff for use; *Held* that these allegations of fact were equivalent to a direct and simple averment that the defendant furnished the powder to the plaintiff for use; notwithstanding the allegation that the agent, when he directed its use by the plaintiff, informed the latter that he wished to test it for blasting purposes, assuring him that it could be used with perfect safety.

That the directions and assurances of the managing agent and superintendent were those of the company; and even if he had no such authority in fact as he assumed to exercise, yet inasmuch as his acts came within the general scope of his powers and duties, the company was bound by them, in the absence of any notice to those with whom he dealt that he was acting in his own behalf, and not in the business of his principal.

That the negligence and misconduct of the managing agent was that of the company; and that he having, in fact and in law, authorized and directed the act, it did not lie with the company to deny all liability to a servant, free from blame, who should suffer injury therefrom.

Where the principal authorizes and directs it; the misconduct of his agent is his; and he is not discharged from liability to his servant who is injured thereby, because he employed another servant as an instrumentality in carrying his purpose into effect.

Spelman *v.* Fisher Iron Company.

THIS is an appeal from an order overruling a demurrer to the complaint.

The action is brought by a laborer of the company, employed in blasting, for an injury occasioned by the premature discharge of a blast, loaded with a newly invented powder, which he was directed to use by the defendant's foreman or superintendent; which powder, it was alleged, was unsafe, had never been tested as an explosive, and could not be tamped for blasting without exploding. The plaintiff, as is also averred, was ignorant of its dangerous quality; and was informed by the superintendent that it was a safe article for use.

The grounds of demurrer are, that it appears from the complaint itself, *first,* that the injury complained of was occasioned by the negligence and misconduct of a fellow servant engaged in the same general business; and, *second,* that there was contributory negligence on the part of the plaintiff.

The following opinion was given by the justice at special term.

POTTER, J. The complaint is for damages done to the plaintiff, by the defendants' negligence. It charges that the defendants are a corporation; that one Otis T. Hall has charge and control of the defendants' works, mines and men employed therein, as principal agent and superintendent; that the plaintiff was a miner by trade and was to work for the defendants as such miner, under the direction, management and control of said Hall as such agent and superintendent; that it was the plaintiff's duty to pack and tamp blasting powder into the holes drilled into the ore and rock, to blast out the ore to discharge it from the main body of ore in the mine; and that powder was furnished to the plaintiff for that purpose by the defendants' said agent, Hall. That said Hall carelessly, and negligently, and without first informing himself whether

Spelman *v.* Fisher Iron Company.

it could safely be used for blasting, took to the defendants' said mine, two cases of a newly invented powder, which he, said Hall, informed the plaintiff he (Hall) wished to test, and directed the plaintiff to charge a hole drilled for a blast with that powder, to test its power. That the plaintiff objected to so doing, on the ground that he knew nothing about it; that said Hall then wrongfully and negligently informed the plaintiff that it was perfectly safe, and insisted upon the plaintiff's using it; that the plaintiff thereupon took a sufficient quantity of said powder to charge a hole drilled in said mine for a blast, and while tamping the same it exploded, severely injuring the plaintiff, so that he was made blind, and setting forth the extent of the injury. The plaintiff also alleges that said powder had never before been tested for blasting purposes; that it was not safe to be used for that purpose, but on the contrary, the plaintiff alleges that it could not be tamped into a hole for blasting without exploding; of all which the plaintiff was ignorant; and that by reason of the wrongful, careless and negligent acts of the defendants' said agent and superintendent, he was damaged, &c.

The defendants set up five causes of demurrer:

1st. The complaint does not state facts sufficient to constitute a cause of action.

2d. That the plaintiff's acts contributed to the injury.

3d. That the plaintiff was not free from fault, and had not alleged that he was free from negligence.

4th. That the injuries were caused by the carelessness and fault of the plaintiff, or by the carelessness and fault of the plaintiff and a co-servant or laborer with the plaintiff, or by the carelessness and fault of a co-laborer and servant with the plaintiff.

5th. That the injuries were not caused in any way by the fault, negligence or carelessness of the defendants.

I understand the rule under the Code to be, that however inartificially stated, if, from all the facts stated in a

complaint, the court çan discover in the complaint a cause of action, the demurrer should be overruled.  The system of pleading under the Code was designed as a remedial one to cure technicalities, secure simplicity, and to relieve parties from losses by reason of the unskilfulness of their professional advisers in pleading.  The difficulty that falls upon the court in this case is, to find by an analysis of all the statements in the complaint, whether a cause of action is stated against the defendants.

If the acts charged are shown to be the acts of the defendants, I think a cause of action is stated.  This involves the examination of the first and fifth causes of demurrer together. It is stated in the complaint, (though we give a little transposition of the order of statement,) and it must be assumed to be true on demurrer, that the defendants are a corporation ; that Otis T. Hall was their principal agent and superintendant in their business of mining ; and that he had the charge· of their works and mines, and of the men in their employ.  'That the plaintiff's business was that of a miner ; that he was at work for the *defendants*, under the direction, management and control of the said Hall, as the defendants' agent and superintendent ; and that the duty of the plaintiff was to pack and tamp blasting powder into holes drilled into the ore in the defendants' mine.   That said Hall carelessly and negligently took two cases of a newly invented powder, and directed the plaintiff to tamp with that powder a hole drilled in said ore for a blast, and test its power ; that said Hall wrongfully, carelessly and negligently informed the plaintiff that such powder was perfectly safe for blasting ; that said Hall had not first informed himself whether the said powder could be safely used for blasting ; that the plaintiff thereupon took a quantity of said powder to charge the hole so drilled for a blast, and that while tamping the same it exploded, and caused the injuries to the plaintiff, complained of ; that said powder had never before been tested for blasting, and was not

safe to be used for that purpose, but on the contrary, such powder could not be tamped into a hole so drilled for blasting, without explosion; and the plaintiff avers, that by reason of the wrongful, careless and negligent acts of the defendants' said agent, he sustained the said injuries, &c.

If these allegations are legally equivalent to a charge that the defendants committed the negligent and wrongful acts set forth, the complaint sets forth a cause of action; otherwise not. It is the settled law of this State, that a master is liable to his servant for any injury happening to him from the misconduct or personal negligence of the master; and this negligence may consist in the employment of unfit and incompetent *servants* and agents, or *in the furnishing for the work to be done, or for the use of the servant, machinery or other implements and facilities improper and unsafe for the purposes to which they are to be applied.* (*Wright* v. *N. Y. Cent. Railroad Co.,* 25 *N. Y. Rep.* 565-6.) Personal negligence is the gist of action, and the master is liable, where he knew, or ought to have known, the defects which occasioned the injury.

The corporation in this case is the master, and the plaintiff was their servant. The master in this case being a corporation, can only speak and act by its agent. And in such cases the master who acts only by agents, will be liable for the acts of an agent who is authorized and who acts as the directing power of the master, when the agent is exercising only such directing power as the master, if an individual, would exercise over servants bound to obey his commands. If this were not so, corporations who are masters would never be liable for injuries to an employèe, because the directing power of a corporation is, and must of necessity always be, an employee and servant. The law would not then put corporations upon an equality of responsibility with private individuals who are placed in the position of masters. The ordering, or commanding agent, or power of a corporation, whose duty it is to give

the control and direction to all other servants, is not to be regarded as the mere co-servant or co-laborer of those whom he so directs and controls, and whose orders they all obey; he has no equal. The master who entrusts the whole charge of supplying machinery, materials, and facilities of conducting his business to a servant or agent, instead of doing it in person, is responsible for the negligence and carelessness of such directing servant or agent. This is too clear a proposition to require discussion; it would be monstrous if it were otherwise. I do not understand this proposition to be in conflict with the rule laid down in *Wright* v. *N. Y. Cent. Railroad Co.*, (*supra.*) The foreman of the work, or general superintendent of the work, may be, and ordinarily is, also a co-workman and co-laborer. I think the character of the agent and superintendent in the case before us, as described in the complaint, (though a servant,) is not that of a co-servant, or a co-laborer, in the common acceptation of those terms; he is the principal agent and superintendent of the defendants' business; he had charge and *control* of their works, mines and men; he speaks the language of the master; he issues their orders; he has the charge of their works and their men; he is their mouth-piece—their interprpreter. Their voice is silent; he only speaks *their* will, not the will of a subordinate; his act is their act; his directions and orders are their directions and orders; they can speak, order, control in no other way. If he is a co-servant, co-laborer, co-employee, of a master, it is a master who can speak and act only by such a servant, who speaks and acts for them. " *Qui facit per alium, facit per se,*" is an established maxim, and has its application here in the question of control.

I take it then that the act of Hall, in the matter in question, was the act of the defendants. They intrusted him with a master's power and responsibility, and the facts stated in the complaint show these acts to be the acts of the defendants; that the way the *defendants furnished*

*powder* for the blasting was by their principal agent and superintendent; that they were bound by his acts in this regard; that they were liable for their own misconduct and negligence as exercised or omitted to be exercised by him; that it is sufficiently charged, in this respect, that their negligence consisted in the employing of a careless, negligent, and an unfit servant to do their business, and in their furnishing, by such servant, unfit and unsafe powder for blasting; that they did not know it to be safe, and by their intrusted servant they represented it to be safe; that they ought to have known its character, before they provided it and directed its use; and that in the omission to inform themselves in this regard, and directing the use of such a hazardous article in the absence of knowledge, and which use resulted in the injury complained of, they were culpably negligent.

The complaint would have been more artistic had it alleged directly, in terms, that the injury was occasioned by the defendants, or by their servants, and it would not then, I think, have suggested a demurrer. Under such a complaint, the negligence of Hall, their servant, could have been proved, and such proof would have created a liability. (*Patterson* v. *Wales*, 28 *Eng. Law and Eq.* 56.) But I think the allegations in the complaint, when analyzed, are equivalent to that, and by the system of pleading under the Code, is sufficient.

The other causes of demurrer are not well taken. I think the complaint sets forth a cause of action.

The demurrer was overruled, and the defendant appealed.

*Waldo & Tobey,* for the appellant.

The complaint does not charge that the injuries were caused by the fault of the defendant, but throughout charges the same to have been wholly caused by the careless, negligent act of the defendant's agent. It does

not charge that the defendant furnished this powder, or that it was used to the knowledge or with the consent of the defendant. On the contrary, it expressly charges that the agent procured the powder.

The complaint does not charge that the defendant's agent was incompetent, or that the defendant was guilty of any negligence in the employment of the agent.

I. An employer is not responsible to those in his employ for injuries resulting from the negligence or misconduct of a fellow servant engaged in the same general business. (*Wright* v. *N. Y. Cent. Railroad Co.*, 25 *N. Y. Rep.* 562.)

II. The rule is the same, although the grades of the employees are different, and the person injured is subject to the directions and general control of him by whose act the injury is caused. (*Wright* v. *N. Y. Cent. Railroad Co.*, 25 *N. Y. Rep.* 562. *Warner* v. *Erie Railway Co.*, 39 *id.* 468. *Faulkner* v. *Erie Railway Co.*, 49 *Barb.* 324. *Hand* v. *Vermont Cent. Railroad Co.*, 32 *Vt. Rep.* 473. *Wilson* v. *Merry*, *L. R.*, 3 *Scotch App.* 326. *Galagher* v. *Piper*, 16 *C. B.* [*N. S.*] 669.) In this last case cited, the plaintiff, a workman, applied to the foreman for more materials to build a scaffolding, and the foreman applied to the general manager, who refused, saying the plaintiff might get along as best he might. The jury found a special verdict, that the scaffolding was insufficient and unsafe, to the knowledge of both foreman and general manager, but not to the knowledge of the defendants, and that the plaintiff was guilty of no negligence. The verdict was set aside, on the ground that the negligence causing the injury was on the part of a fellow servant.

III. The complaint shows that the plaintiff's acts and conduct contributed to the injury, and hence he can't recover. (*Wilds* v. *Hudson River Railroad Co.*, 24 *N. Y. Rep.* 430. *Brown* v. *Maxwell*, 6 *Hill*, 592.)

IV. An employer is never liable for the negligent or willful acts of the servant, when the servant is not engaged

in the line of his duty in the scope of his employment. (*Dunlap's Paley on Agency*, 295, 296, 298.) It was not in the line of the duty of either the plaintiff or Hall to experiment in testing the qualities of an untried powder.

*G. M. Beckwith & Son,* for the respondent.

I. The Code prescribes the manner of pleading. The complaint is to contain "a plain and concise statement of the facts, without unnecessary repetition." Under this rule the plaintiff may, *and should* in all special cases, spread out the facts *truthfully*, which constitute his cause of action, and if as a conclusion of law therefrom he shows a good cause of action, his complaint is good in form and substance. The plaintiff in this case has stated the facts constituting his cause of action, and the defendant admits that these facts are truthfully stated. What then is the conclusion of law to be derived from these admitted facts? to wit: 1st. The defendant was a corporation, (who can speak and act through its officers only.) 2d. Otis T. Hall was its general agent and superintendent, and had the management and control of the defendant's business, and of all the men employed in the works of the defendant. 3d. The plaintiff was a miner for the defendant, under the direction, management and control of Hall, as such agent, &c. 4th. That the plaintiff's duty was to pack and tamp powder for blasting, &c. 5th. That powder for that purpose was furnished *by the defendant* through said Hall, as such agent, &c. 6th. That in January, 1868, Hall negligently and carelessly supplied a powder that could not safely be used for blasting. 7th. That Hall directed the plaintiff to use it, and carelessly, negligently and wrongfully represented it as safe to use, and that the plaintiff obeyed Hall and tried to use it. 8th. That while tamping it, it exploded and caused the injury complained of. 9th. That the powder had never before been tested, was not safe, and could not be tamped without exploding. 10th. The extent

of the injury. We submit that these facts do constitute a good cause of action against the defendant in this action.

II. Does the complaint show that the plaintiff contributed to his injury through his own negligence? Was it negligence on the part of the plaintiff to carefully ask the company, through their agent, if the materials given him to work with were safe? And, again, was it negligence in the plaintiff, after having been positively informed by the company of the safety of the powder, to use it? or was it simply the obedience that is due from a subordinate to his superior, from a servant to his master? In the mining case of *Patterson* v. *Wallace*, (28 *Eng. Law and Eq.* 48,) the managing superintendent Snedden, told Patterson that it would be perfectly safe for him, Patterson, to put his bed under the stone which subsequently fell and destroyed his life, and the court held the *company* liable for the acts of *Snedden, their manager;* for the inference to be drawn from his words as he intended, and as Patterson understood was, "it is perfectly safe;" "you will not incur any risk in pursuing your usual labors in consequence of this stone;" "there is no danger;" or in the language of Otis T. Hall, the defendant's mouth-piece, when asked by the plaintiff in reference to the powder that blew him up, said "*it is all right.*" A protracted association of servant and master, where no evidence of a master's carelessness has happened to have made itself manifest to that particular servant, tends to create a confidence in the servant as to the carefulness of his master, be he in fact ever so negligent. Was it then negligence in the plaintiff, after having conferred with the defendant's agent as to the safety of the materials put into his hands, to rely upon the judgment of his superior and obey his commands? We submit that it was not.

III. It was not necessary to aver that the plaintiff was not negligent, nor that his conduct did not contribute to the injury. 1st. The plaintiff discloses all the facts in the case. These facts negative the idea of negligence in him,

or that his voluntary act contributed to the injury. All that plaintiff did by the express direction of the defendant or Hall, was the act of the defendant and not of the plaintiff. 2d. A plaintiff is required to plead in his complaint every fact necessary to be proven to maintain his action, and nothing more. He is not required to anticipate any defense. 3d. Negligence in the plaintiff can only be proven under an allegation of such negligence in his answer; it is an affirmative defense. The plaintiff need not prove that he was not negligent. The defendant must prove such negligence, if he would use such defense. (11 *Abb.* 270. 19 *How. Pr.* 370.)

IV. Does the complaint show that the injury was caused by a co-laborer or co-servant, and not by the defendant's negligence? Was the general managing agent, Otis T. Hall, a co-laborer with the plaintiff? The word "co," from the Latin "con," meaning "together," "with," and prefixed to "labor," denotes a companionship. Was Otis T. Hall a fellow-laborer, a fellow-servant with Dennis Spelman in the mines? Did he blast? Did he tamp? Did he hoist materials, dig, or do anything that would leave a reasonable supposition of his being an associate in the business? No. It seems to us that the relation of Hall to the Fisher Iron Company was precisely the same as that of Snedden in the case above cited, and wherein Lord Brougham in his learned opinion says: "Snedden was the manager of the company, and, beyond all doubt, for his negligence the company are responsible." Here Hall was more than an agent. *He was manager;* and for the purpose in question, or for any other purpose connected with the mines, was the Fisher Iron Company itself. He directed the works, hired and paid the men, bought and paid for the material that was used in carrying on the business of the mines, sold and received pay for the pro-

ducts of the mines, was the general business managing agent of the concern.

The rule "that a principal is not liable to an agent or servant for an injury sustained by him in consequence of the misfeasance or negligence of another agent or servant of the same principal, while engaged in the same general business," does not apply here, any more than in the case of *Keegan* v. *The Western Railroad Corp.*, (4 *Seld.* 175.) Hall was not an agent of the company for any particular and specified purpose. If he had been, the case might have been different, and have come under the above rule. Chancellor Kent, in his Commentaries, (vol. 2, p. 306,) speaking of corporations, says : "All the individuals composing a corporation, and their successors, are considered in law *as but one person.*" It must necessarily be so, for the security and harmony of all business relations. No ten men or twenty can all run a mine, all giving specific directions and instructions, according to each one's own understanding or idea of the business to be conducted. It must be done by the whole company as one man. And how is this to be done, except by employing a general business managing agent, as did the Fisher Iron Company, in the *person of Otis T. Hall*, and as such representative agent his acts are their acts, his successes their successes, his misfortunes their misfortunes, *his negligence their negligence.* "A general agent," says Parsons, (*Parsons on Cont.* 39, 40,) "is one authorized to transact all his principal's business, or *all his business of a particular kind.*" And, again, "if a particular agent exceed his authority, the principal is not bound, but if a *general* agent exceed his authority, the principal *is bound.*" Kent .(2 *Com.* 835) holds substantially the same language. He says : "There is a very important distinction on this subject of the powers of an agent, between a general agent and one appointed for a special purpose. The acts of a general agent, or one whom a *man* puts in *his* place, to transact all his business

of a particular kind, at a particular place, *will bind his principal*, so long as he keeps within the general scope of his authority, though he may act contrary to his private instructions, and the rule is necessary to prevent fraud and encourage confidence in dealing. But an agent constituted for a particular purpose, and under a limited power, cannot bind his principal if he exceeds that power." Here *Hall was not* a particular agent. In the case of *Wright* v. *N. Y. Cent. Railroad Co.*, (25 *N. Y. Rep.* 562,) *Upton was* the particular agent, particularly employed for a specific purpose—in the language of the court, "the managing agent of engineers, and the person authorized by the defendant to employ engineers." *Hall* was the managing agent of all the business of the "Fisher Iron Company," connected with their mines in the town of Moriah. He was not particularly authorized to deal out powder and implements of work to the miners; he could hire and dismiss, call and recall, order or retract his commands. He was in fact supreme. In what respect then, we ask, were his acts distinct from the acts of the company he represented? Wherein did his negligence differ from the negligence of the company? Why, by the very nature of his occupation, he *must* have been their legal representative, and as such the company were bound by his acts. Having, then, as it seems to us, shown clearly the position of the defendants' agent, Otis T. Hall, and identified him with the Fisher Iron Company itself, it leaves our position apparent, viz: The defendants, as one individual, hired the plaintiff, Dennis Spelman, to work in their mines in the town of Moriah, Essex county, New York, and by reason of the dangerous character of the business engaged in, were bound, upon employing him—and it was a part of the the contract whereby the price of wages was materially affected—to furnish him with safe and suitable tools and materials to work with, and use ordinary care in the selection of competent and careful co-laborers and agents.

(*Hayden* v. *Smithville Manuf. Co.*, 29 *Conn. R.* 548.   *Keegan* v. *Western Railroad Corp.* 4 *Seld.* 175.   *Patterson* v. *Wallace*, 28 *L. and Eq.* 48.   *Marshall* v. *Stewart*, 33 *id.* 1.)   It remains then for the court to determine, whether it was using ordinary care and diligence in the case in question, for the defendants to undertake to experiment with their employees in putting into their hands materials in the shape of an unknown and untried powder, that had never been tested before, and for the sake of gratifying a whim, or for a pecuniary gain to themselves, endanger the lives of their servants and workmen.

V. If the Fisher Iron Company are not responsible to the plaintiff for the injury he sustained by the aforesaid negligence, we would inquire in what manner, by what circumstances, can a corporation ever be held responsible to its servants for any injury sustained by them.   It was the duty of the company to furnish safe tools and material for their servants to work with.   How was that duty to be performed?   It would be impracticable for all the stockholders to meet and purchase, in a body, these tools, or the powder.   The president of the corporation is, equally with Hall, a servant of the corporation.   Was he a co-servant with Dennis Spelman?   The directors of the corporation are but servants whose duty is prescribed by the stockholders, who act by a delegated power, as agents, as representatives, as servants.   The stockholders alone are the company in fact, and if the corporation are to be relieved from damages occasioned by the negligence of Hall, the same rule will relieve them from damages occasioned by the negligence of the president and directors.   And thus a corporation may kill its servants by the hundred, and pay nothing, because, being an artificial person, it cannot speak or act negligently.   The president and directors, it may be said, are authorized to act for the company in all things.   So too was Hall.   Any contract he made in his character as agent could be enforced.

There can be no question but that for the negligence of Hall, while in the discharge of his duty as the general managing agent of the defendant, the defendant is responsible. Any other rule would, in the language of Judge Potter, be monstrous.

*By the Court,* BOCKES, J.   On careful analysis and fair reading of the complaint, it stands averred, as I think, 1st. That the company furnished the powder for use in its ordinary and appropriate business.   2d. That its superintendent directed its use by the plaintiff in such business. 3d. That it had never been tested as an explosive in blasting, and was, in fact, unfit and unsafe for such use; and 4th. That the plaintiff was ignorant of its dangerous properties.   If correct in thus reading and construing the averments of the complaint, a right of action is unquestionably stated.   It was held in *Wright* v. *The N. Y. Central Railroad Co.,* (25 *N. Y. Rep.* 562,) that the master is liable to his servant for injuries to the latter occasioned by reason of furnishing for the work to be done by him, or for his use, implements and facilities improper and unsafe for the purpose for which they were to be applied; that is, in case the employer knew, or *ought to have known,* of the defects which caused the injury, and the servant was ignorant of them.   The authorities bearing on this subject, and supporting this proposition, are collected in the case cited, and here require no particular comment.

The rule is clearly established, and settles the question of liability in this case against the defendant, on the facts averred in the complaint.   The risk of personal injury in blasting, with the ordinary appliances used for that purpose, the plaintiff assumed, under his contract with the company to labor in that employment; but not those risks attendant upon the use of an unusual, untested and exceedingly dangerous article, which could not be tamped without inevitable explosion; the dangerous quality of

which was unknown to him. It was gross negligence in the company to furnish such an article for the laborer's use, without giving him information in that regard. Certainly this was so in case the company was aware of its dangerous quality; and the culpability was little less, in fact, and none in law, in case the new explosive was furnished for use without having taken any steps to obtain such knowledge.

It is insisted that there is no averment that the powder was furnished by the company. On first view it seemed to me that this objection was well taken. But after careful examination of the complaint, I am led to a different conclusion. It is averred that Hall was the managing agent and superintendent of the company; that the powder for blasting was furnished by the company through him, and that he furnished this unusual and unsafe article to the plaintiff for use. These allegations of fact are equivalent to a direct and simple averment that the defendant furnished the powder to the plaintiff for use. Nor is this changed in its legal import and effect by the allegation that the agent, when he directed its use by the plaintiff, informed the latter that he wished to test it for blasting purposes, assuring him that it could be employed with perfect safety.

The directions and assurances of the managing agent and superintendent were those of the company. The company could only act in these regards through duly constituted agencies; and even if the general and managing agent had no such authority in fact as he assumed to exercise, yet inasmuch as his acts came within the general scope of his powers and duties, the company was bound by them, in the absence of any notice to those with whom he dealt, that he was acting in his own behalf, and not in the business of his principal. So it follows that in this case the negligence and misconduct of the managing agent was the negligence and misconduct of the company, in its strictest sense.

Spelman *v.* Fisher Iron Company.

The agent, as must be assumed from the averments in the pleading, was acting in exact accordance with directions given by the company. As regards the company, his principal, he was doing no wrong. He was simply obeying instructions. Having, in fact and in law, authorized and directed the act, it does not lie with the company to deny all liability to a servant, innocent of blame, who should suffer injury therefrom. In this view it is not the case of an injury occurring through the negligence or misconduct of a fellow servant, for which the principal is not liable in law. Where the principal authorizes and directs it, the misconduct is his, and he is not discharged from liability to his servant who is injured thereby, because he employed another servant as an instrumentality in carrying his purpose into effect.

Nor does it appear from the complaint in this case, that there was contributory negligence on the part of the plaintiff. For anything that is alleged in the pleading, he acted with due caution. He inquired, and was informed that the new explosive was a safe article to be used in his business of blasting. He had a right to rest on this assurance from his principal, who furnished it and directed its use.

In my opinion, the order directing judgment for the plaintiff on the demurrer was right, and should be affirmed, with $10 costs of appeal, and disbursements.

Order of special term affirmed, with $10 costs, and disbursements. But with liberty to the defendant to withdraw the demurrer, and answer the complaint within twenty days after service of the order of affirmance, on paying the costs of the demurrer and the costs of appeal.

[SCHENECTADY GENERAL TERM, April 5, 1870. *Rosekrans, Potter, Bockes* and *James,* Justices.]