H. & T. C. R'y Co. v. CHARLES MARCELLES.

1. ASSIGNMENT OF ERROR.— An assignment of error that "the finding of the jury is contrary to the law as given them in. the instructions of the court," without discriminating as to what particular branch of the charge was disregarded by the jury, will not be considered.

2. DAMAGES.— A corporation is liable in damages to its employee who is injured by the use of defective machinery which he is required to use, and this whether it was negligent in providing unsafe machinery, or negligent in failing to keep machinery originally safe in safe condition. One charged with keeping machinery in safe condition is not a fellow-servant with him who operates it, in the sense which would relieve a corporation from liability, when the latter is injured by the negligent performance of his duties by the former.

ERROR from Grayson. Tried below before the Hon. Joseph Bledsoe.

Charles Marcelles brought this action against the Houston & Texas Central Railway Company for alleged injuries received by him on the 1st day of October, 1877, while in the employ of said company and in the discharge of his duties as switchman, laying his damages at $10,000. The negligence stated in the petition was the failure of the H. & T. C. R'y Co. to provide suitable fastenings to a rod used on this particular engine for switchmen to hold to in going on the engine from one part of the yard to another, and that the fastenings of the rod had been out of repair for a long time; that the plaintiff, in using and relying upon the rod while the engine was in motion, had received his injuries by the rod turning down under the pressure of his weight, throwing his feet off of the engine and causing him to be dragged along the track and over a frog, lacerating his buttocks, thighs, etc. It was also alleged as an act of negligence that no fireman was employed on the engine to assist in keeping a lookout.

The defense was general denial and special answer; that the negligence was that of a fellow-servant, and that defendant furnished

suitable and safe machinery for the use of plaintiff, which was changed by the attachment of the rod without the knowledge or consent of defendant. Verdict and judgment for plaintiff for $1,800.

*P. De Armond*, for plaintiff in error.

No briefs for defendant in error have been delivered to the reporter.

WALKER, P. J. COM. APP.— The first assigned error is that "the finding of the jury is contrary to the law as given them in the instructions of the court." A verdict is not wrong because it is not in accordance with an erroneous charge, and a judgment will not be reversed because it is not. Merriweather *v.* Dixon, 28 Tex., 19; Wright *v.* Wright, 6 Tex., 23. If the assignment is meant to imply that the charge was correct law, in order to assail the verdict as being in conflict with the law of the case as given in the charge, it must be treated as the assumption by the appellant that the charge gave the law of the case, and that the verdict was contrary to the law. The charge contained several distinct propositions on which the liability of the defendant was made to depend, and the assignment fails to discriminate or specify as to which of them contained or embraced a legal proposition which was disregarded, and contrary to which the jury found their verdict, nor does it point out wherein the verdict was against any one of them, or against the charge considered as a whole. Wherefore the assignment fails to conform to the statute (Pasch. Dig., art. 1591), or to rules 24 and 25 for the supreme court, and under the law the assignment must be deemed as waived. The brief of appellant's counsel does not attempt to indicate the particular error complained of, beyond a mere literal quotation of the assignment itself; consequently this assignment cannot be further noticed.

The second assignment is that "the finding of the jury is contrary to and against the evidence." There is no conflict in the evidence, and the sole question is whether there is sufficient evidence to support the verdict. The rule on this subject, where it is a question of deficiency of proof to establish the cause of action, is that the evidence ought to be sufficient to satisfy the mind of the truth of the allegations, otherwise a new trial ought to be granted in the court below; and if that court refuses to grant it, the supreme court will revise the judgment overruling the motion. Chandler *v.*

Meckling, 22 Tex., 42. The evidence proved the alleged defectiveness in the machinery or appliance attached to the engine, and that his injuries resulted from that defect. The evidence of carelessness on the part of the railway company in failing to keep the engine in a safe condition for use by its employees was circumstantial, and not as full and satisfactory as an issuable fact of that kind might be made. There was evidence, however, from which an inference might reasonably be drawn, that the defective rod had been in use for eighteen months, during which time it had become worn and unsafe to rely on; and, as it laid in the power, presumably, of the defendant to show that due and timely inspection of its condition had been made from time to time, if that fact existed, the failure to show such fact in rebuttal of the evidence of its weakness, and the insecurity involved to those whose duty constantly imperiled life or limb by using it, might well be regarded as significant and important, though negative evidence of the defendant's want of care, and as tending likewise to prove the incompetency of the machinist in charge, whose duty, the evidence showed, was "to keep the machinery in repair and fit for the uses required."

The foreman of the yard testified "that it was his business and duty to see the engines used on his yard and appliances were kept in order, and that he supposed this rod was in good fix." Newdoffer, the machinist of the yard, testified "that it was his duty, when his attention was called to it by the foreman of the yard, to repair machinery and appliances; that about eighteen months ago he had placed this rod on the tender by the direction of the foreman of the yard, and that he had securely fastened it."

The foregoing testimony leaves it to be inferred that eighteen months' use of the engine and the rod appliance had had the effect to render the latter at last unsafe and dangerous, and that notwithstanding the supposition of the foreman of the yard that it had continued to be "in good fix," that his conjecture was not based on any vigilance or steps taken by him or any other person connected with the yard or machine shop to learn what condition it actually was in. The fact that it was not proved that Newdoffer was called on to repair or examine the rod previous to the accident, and that he did repair it immediately thereafter, and found it expedient to fasten it more securely than it had been before, "by means of iron staples inclosing the rods above the bolts, was evidence of a negative character tending to prove the want of care of those who were intrusted by the company with the duty to keep the engine in proper repair. There was not in the evidence such want of evidence of de-

fendant's liability as to enable us to say that it might not reasonably satisfy the jury of the truth of the facts which constituted the plaintiff's cause of action. In regard to the degree or conclusiveness of the evidence necessary to support the verdict, it is hardly necessary to recur to the difference that exists in the rules which govern the supreme court and the inferior court in revising the action of the jury on their verdicts.

. It is well settled that this court will not reverse, even where the court is not well satisfied that the verdict is right, or where it might upon the evidence have come to a different conclusion, or because the verdict might appear to the court to be founded on slight evidence. Carter v. Carter, 5 Tex., 93. So far as ·the weight of the evidence is concerned, where the court below has refused a new trial, the supreme court will not reverse for that cause unless there has been a manifest abuse of judicial discretion in the refusal. Ables v. Donley, 8 Tex., 331.

The accident was occasioned by the faulty or defective appliance attached to the tender of the engine. If it was in that condition under circumstances that constituted undue care and negligence, although it is shown by the evidence that it was the duty of the foreman of the yard to have guarded against danger in its use, by timely inspection and repair,— if it were true, as alleged in the answer, that the plaintiff was a fellow-servant with the foreman, the company, nevertheless, would be liable.

The authorities are conflicting and numerous as to whether the servant who has charge of the construction and repairs of the machinery used, is, in the master's absence, to be deemed a fellow-servant with a servant who is employed in connection with its running operations. Mr. Wharton and Mr. Thompson, in their treatises on negligence, arrive at the conclusion that the better opinion is that he is not. See 2 Thomp. on Neg., p. 1032, notes, § 36, and authorities there cited; Wharton on Neg., sec. 212.

From the authorities referred to by Mr. Thompson, he deduces his conclusion thus: " That such a servant, then, is fairly deemed a vice-principal of the master, and his negligence is the master's negligence to all intents and purposes the same as though the master were present performing his duties in person." 2 Thompson on Neg., p. 1033. The author says in a note that it was so held in Railroad Co. v. Stout, 17 Wall., 553; 56 Barb., 151; Laning v. New York, etc., R. Co., 2 Thomp. on Neg., p. 932.

Mr. Wharton, *supra*, sec. 212, treating of the master's duty in respect to machinery furnished to his servants, says: " The duty of

---

---

repairing is his own; and, as we shall hereafter see, the better opinion is that he is directly liable for the negligence of agents when acting in this respect in his behalf. If the master 'knows, or, in the exercise of due care, might have known,' that . . . his structures or engines were insufficient, either at the time of procuring them or at any subsequent time, he fails in his duty." And again he says (sec. 232a), "It has sometimes been said that a corporation is obliged to act always by servants, and that it is unjust to impute to it personal negligence in cases in which it is impossible for it to be negligent personally. But if this be true, it would relieve corporations from all liability to servants. The true view is, that as the corporation can act only through superintending officers, the negligence of those officers, in respect to other servants, are the negligences of the corporation."

The views expressed by Mr. Wharton are illustrated in quotations made in the opinion of Justice Harlan in Hough v. Railway Co., 100 U. S. S. C., from the opinions of Chief Justice Cockburn and Justice Crompton, and of Byles, J. (English), and of the court in Ford v. Fitchburg Railroad Co., 110 Mass., 241, with great force of reason, supporting fully the text-writers above quoted from in this opinion. See, also, Hough v. Railway Co., supra.

In Ford v. Fitchburg R. Co., supra, the opinion remarks: "The agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow-servants of those who are engaged in operating it. They are charged with the master's duty to his servant. They are employed in distinct and independent departments of service, and there is no difficulty in distinguishing them, even when the same person renders service by turns in each, as the convenience of the employer may require. . . The corporation is equally chargeable, whether the negligence was in originally failing to provide, or in afterwards failing to keep its machinery in safe condition."

Adopting, as we do, the rule as thus laid down as the correct one, we are of opinion that there was sufficient evidence to maintain the verdict.

The assignment that the amount found by the verdict is excessive is not well taken. Railway Co. v. Casey, 52 Tex., 124; Railway Co. v. Randall, 50 Tex., 260.

We conclude that the judgment ought to be affirmed.

Affirmed.

[Opinion approved April 27, 1883.]