ANN SHANNY, *per pro ami, vs.* ANDROSCOGGIN MILLS.

Androscoggin, 1876.—November 21, 1876.

*Master and servant.*

It is the master's duty, not only to provide suitable machinery for the use of the servant, and that which shall impose upon the servant no other or greater danger than is naturally incident to the business or employment, but to exercise all reasonable care in keeping it in the same condition.

The servant whose duty it is to keep machinery in repair, is not a fellow servant with one whose duty it is to use the same machinery, so that the master would be exempt from liability on that ground for an injury to the latter, in consequence of the neglect of the former.

A servant receiving an injury through a defect in the machinery, caused by the negligence of the master, cannot recover, if he received such injury through a want of care on his own part, or in the disregard of a reasonable regulation of the master.

ON EXCEPTIONS AND MOTION FOR NEW TRIAL.

CASE for an injury to the plaintiff, October 9, 1875, caused by the alleged negligence of the defendants in failing to keep a certain portion of their machinery, upon which the plaintiff worked, properly covered.

The declaration, after setting out matters of inducement alleged that "the defendants knowingly, carelessly, negligently, and wrongfully permitted said machinery and gearing, to be improperly, defectively, and insufficiently covered, and for want of a proper and sufficient covering for said machinery and gear, all of which was unknown to the plaintiff, but was well known to the defendants, the plaintiff who was then and there in the said employment of said defendants, and by their special direction was with due care, cleaning said machinery and gear, then and there, without any fault of her own, and by reason of said improper, defective, and insufficient covering of said machinery and gear, was caught by her right hand in said machinery and gear, and thereby the said hand of the plaintiff was greatly injured and damaged, so that the plaintiff entirely lost two fingers of her said hand, and lost the use of the third finger of said hand," &c., &c.

*Plea,* the general issue.

It was not denied that the plaintiff, in the employ of the defend-

ants, was hurt to the degree alleged, and that it occurred by her fingers being caught in the gearing, while wiping the ends of the machinery when in motion.

It appeared that the covering or fencing had been broken a few weeks before, and that the new castings which were necessary for repairs were finished; and that it was through the negligence of a servant of the corporation, that they were not returned so that the repairs could be completed before the plaintiff was hurt.

As to the precise spot where her fingers caught, there was conflicting evidence; but by the findings of the jury, it was where there was a defect—a want of covering—for which the defendants were at fault.

It was in evidence, that even when the machinery was fenced, in the customary way, it was not free from danger, and that although it was the duty of the employees, such as this plaintiff was, to wipe the ends of the machinery, there was a time set apart for that purpose, and that they were expressly forbidden, by a rule of the corporation, to wipe those ends while the machinery was in motion, and that this plaintiff knew of the rule, and of the danger, and had once before been threatened with dismissal for stopping the machinery at an unreasonable time for the purpose of cleaning; that every Saturday at four o'clock, the machinery was stopped for this purpose, and that there was sufficient time after that, within working hours, to do the cleaning, and that this plaintiff was hurt on this Saturday afternoon, some fifteen minutes before four o'clock, while wiping the machinery then in motion.

The point was taken at the trial that the plaintiff, on account of her infantile age and inexperience, was not informed, made sensible of the danger and the degree of it. The evidence on this point was that she was some months more than fourteen years of age and that she had worked in cotton mills, in one capacity or another, more than four years.

The defendants at the trial, among other things, contended that if the jury found the alleged carelessness in the want of a proper covering for the machinery, and that the omission was occasioned by the carelessness of a fellow-servant whose duty it was to repair it, then the defendants were not liable.

The presiding judge, among other things to which no exceptions were taken, charged the jury as follows :

"It is a rule of law, that where there are different persons engaged in the same employment, so that they are what are called fellow-laborers or fellow-servants, if one of them is injured by the careless act of another, the master is not liable ; that they take the risk upon themselves, when working together in their common employment ; that while the person injured might have a remedy against the careless servant, he would have none against the master.

That is a well settled rule of law. But I instruct you, it does not apply to an omission on the part of the master or employer. It does not apply to the machinery and the putting of it into proper condition. It is the duty of the master, whether the master is a corporation or a natural person, to furnish suitable machinery for carrying on his work ; and for any omission to guard it properly, the master is liable.

At any rate, this is not a case where the rule in relation to the carelessness of a fellow-servant applies : If some act of one of the laborers in the same room with the plaintiff—or if in doing their work one of the other girls employed in this mill, had done a careless act, and thereby injured the plaintiff, the defendants would not be liable.

But where the alleged carelessness relates to the machinery or the roads or bridges connected with a factory, and constituting a part of it, if there is an omission, it is the omission of the master or employer in contemplation of law ; so that the doctrine in relation to the carelessness of fellow-servants does not apply."

The verdict was for the plaintiff; and the defendants seasonably filed a motion to set aside the verdict as against law and evidence, and for a new trial, and also alleged exceptions, to so much of the charge of the presiding judge as is set forth herein.

*W. P. Frye, J. B. Cotton & W. H. White,* for the defendants.

*L. H. Hutchinson & A. R. Savage,* for the plaintiff.

I. As to the exceptions :

A master is bound to provide safe and sound materials and accommodations for his servants and such appliances as are reasona-

ble safe and necessary to insure their safety. Shearman & Red-field on Neg., pp. 119, 672. *Buzzell* v. *Laconia Co.*, 48 Maine, 113. *Ford* v. *Fitchburg Railroad*, 110 Mass. 240. *Gilman* v. *Eastern Railroad*, 10 Allen, 233, and 13 Allen, 433. *Snow* v. *Housatonic Railroad*, 8 Allen, 441.

A master is liable to his servant for injuries resulting from a defect in his machinery, although the negligence of a fellow-servant contributes to the accident. *Cayzer* v. *Taylor*, 10 Gray, 274.

II. As to the motion.

The jury having heard the evidence and viewed the premises, have established the defendants' negligence beyond any reasonable question. *Brown* v. *Moran*, 42 Maine, 44. Plaintiff was bound only to use ordinary care. Shearman & Redfield on Negligence, pp. 35 and 36. An infant is held only to such a degree of care as is usual among children of his age. Shearman & Redfield on Negligence, pp. 63, 127. *Brown* v. *Railroad*, 58 Maine, 387. *Birge* v. *Gardiner*, 19 Conn. 507, 512. *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572.

The court will not interfere and grant a new trial, unless upon strong conviction that the jury have fallen into some error in regard to the nature and force of the evidence, or that justice has not been done. *Smith* v. *Richards*, 16 Maine, 200. *Marshall* v. *Baker*, 19 Maine, 402.

DANFORTH, J. This is an action by an employee against her employer to recover damages for a personal injury resulting from an alleged defect in the machinery provided for her use. It depends upon the obligations of the master to his servant while in his employment. The action has been submitted to a jury and comes before us upon exceptions and a motion for a new trial.

The presiding justice gave the rule of law contended for by the defendants so far as it relates to their liability for an injury to the plaintiff resulting from the negligence of a fellow-servant. But he further instructed them that "this is not a case where the rule in relation to the carelessness of a fellow-servant applies." He then states where the rule does apply, and goes on to say, "but where the alleged carelessness relates to the machinery or roads or bridges connected with a factory, and constituting a part of it, if

there is an omission, it is the omission of the master or employer, in contemplation of law."

The first part of this instruction is clearly correct. The declaration alleges an omission and neglect on the part of the defendants. It sets out no other cause of action. Whatever may have been the facts, or whatever may be the law in relation to the liability of the master for the negligence of his servants, in this action, if the plaintiff can recover it must be on the ground set out in her writ, that of an omission amounting to culpable negligence on the part of the defendants. True this omission need not necessarily be personal—in the present case a corporation being defendant it could act only by servants or agents—but it must be such if on the part of an employee as to be imputable to or legally that of the employer.

From the remainder of the instructions the jury could only infer that the defendants would be directly responsible for all defects in the machinery furnished, and under the writ and the facts in the case not only to exercise the proper care in providing fit and suitable machinery for the purpose intended and that which is as reasonably safe as its use will permit, but to use the same degree of care in keeping it in that condition. The degree of care requisite was undoubtedly explained to the jury, as no objections are raised upon that point. The objection seems to be that by the instruction, where in a case of this kind it is shown that through the want of such care of the machinery as the law requires it is permitted to become and remain in a dangerous state, the fault is imputable to the master or employer, and he cannot excuse himself on the ground that it was through the negligence of an agent or servant.

This we have no doubt is good law. No objection is or could successfully be made to it as applicable to the machinery furnished in the first instance. It is now too well settled to be doubted that the servant under his contract for service assumes such risks only as are incident to his employment. These risks include the use, not the purchase, of the machinery, as well as the dangers resulting from the carelessness of a fellow-servant, not the responsibilities of hiring, in the first instance. *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572, and cases cited.

The same care requisite in hiring a servant in the first instance must still be exercised in continuing him in the service; otherwise the employer will become responsible for his want of care or skill. The employer will be equally liable for the acts of an incompetent or careless servant whom he continues in his employment after a knowledge of such incompetency or carelessness, or when in the exercise of due care he should have known it, as if he had been wanting the same care in hiring. The same may very properly be said of the machinery. The servant has no more control of the repairs than of the purchase, no more responsibility for the one than for the other. The use of it is for him, and the risk of that use whatever it may be he assumes. That comes within his contract; but, as part of the same contract, the employer provides the means of carrying on the business; and as a matter of course he assumes the responsibility that his work shall be done with due care ; and, as the responsibility continues so long as the means are used, so must the same care be exercised in keeping the required means in the same safe condition as at first.

This doctrine has been so fully and satisfactorily discussed that it is unnecessary to do more than to refer to some of the later decisions. *Buzzell* v. *Laconia Manufacturing Co.*, 48 Maine, 113. *Gilman* v. *Eastern Railroad Co.*, 13 Allen, 433.   *Snow* v. *Housatonic Railroad Co.*, 8 Allen, 441.   *Ford* v. *Fitchburg R. Co.*, 110 Mass. 240.   *Lawler* v. *Androscoggin Railroad Co.*, 62 Maine, 463.   *Cayzer* v. *Taylor*, 10 Gray, 274, 275.

It is however claimed that the machinery became injured and dangerous, if it were so, without the fault of any one and that its continuance in that condition to the time of the injury, if the result of negligence, was the fault of the superintendent whose duty it was to keep the machinery in repair and was therefore the carelessness of a fellow-servant, a risk which the plaintiff assumed. The facts contained in this proposition may be admitted.   If the law is correct, undoubtedly the instructions were wrong as being too broad.   The effect of them was as claimed; they took from the jury the consideration of these facts.   But the principle of law here claimed is fallacious in several respects.   Assuming that the superintendent was negligent, that negligence was indeed a remote

but not the proximate cause of the injury. This was the immediate and necessary result of the defective machinery. It is only when the carelessness of a fellow-servant, in the use of the machinery or independent of it, causes the injury that it can be said to be the efficient cause so as to exempt the master: In this case the defective machinery, for which the master was responsible, intervened between the carelessness and the injury and was of itself an independent and efficient cause of the accident.

Besides, the person whose duty it was to keep the machinery in order, so far as that duty goes, was not in any legal sense the fellow-servant of the plaintiff. To provide machinery and keep it in repair, and to use it for the purpose for which it was intended, are very distinct matters. They are not employments in the same common business, tending to the same common result. The one can properly be said to begin only when the other ends. The two persons may indeed work under the same master and receive their pay from the same source; but this is not sufficient. They must be at the time engaged in a common purpose or employed in the same general business. Shearman & Redfield on Negligence, §§ 100 and 108. We do not now refer to the different grades of service about which there is considerable conflict of opinion, but of the different employment. In the repair of the machinery the servant represented the master in the performance of his part of the contract and therefore in the language of the instructions, his negligence in that respect, is the "omission of the master or employer, in contemplation of law." *Ford* v. *Railroad Co.*, above cited, p. 260.

The plaintiff, so far as regards the repair of the machinery, stands in the same position as any person not a servant but who was rightfully in her position; and the same responsibilities and liabilities rest upon the master for acts of himself or servant as would in such a case. *Coombs* v. *New Bedford Cordage Co.*, before cited, p. 599. The instructions are in accordance with well settled principles of law, and the exceptions must be overruled.

This brings us to the motion for a new trial on the ground that the verdict is against the law and the evidence. There appears to be but little conflict of the testimony in the case; and such conflict

is perhaps more apparent than real. As to the place where and the manner in which the accident happened the testimony comes mainly from the plaintiff and though some of the circumstances proved by other witnesses tend to throw doubt upon her statement, the jury must have found it substantially true and we see no reason to disturb their finding in that respect. We assume then that she was injured through a defect in the machinery and one for which the defendants were liable, the defect having existed for so long a time that its condition must be imputed to culpable neglect on the part of the defendants.

But this alone is not sufficient to enable the plaintiff to maintain her action. She might herself have assumed all the risk and danger arising from the condition in which the machinery was. The duty of the master to furnish reasonably safe and suitable machinery is one which the servant may waive and it is claimed that she did so in this case.

The employer may undoubtedly exercise his own judgment as to the kind of machinery he will use, as well as to the condition in which it shall be kept. Having due regard to the rights of others he may do that which in his own view his interest may dictate or he may even be careless of that interest. But if he elects to use machinery unsuitable, or permits it intentionally or carelessly to get out of repair so that in its use the employee incurs more danger than fairly and naturally belongs or is incidental to the business or employment, another and a somewhat different duty devolves upon him. In such case he is required to give such information to the servant as will enable him to enter into his contract intelligently and with a full understanding of the unusual dangers he is to encounter. As ordinarily the employee assumes the responsibilities of such dangers as are naturally incident to the employment, so, by the same rule in the absence of any evidence to the contrary, his contract is presumed to cover all the risks of which he has knowledge. *Sullivan* v. *India Manufacturing Co.*, 113 Mass. 396. To relieve the master from liability upon this ground it must appear not only that the servant had knowledge of the insufficiency of the machinery but that his age and experience or the instructions given him by the master or some one

in his behalf were such as to enable him fully to understand and appreciate the dangers attending the employment. That he assumes the ordinary risks, the law will infer from the contract of service. If the master would impose upon him the extraordinary risks the burden is upon the master to show as matter of fact that such was the contract. *Coombs* v. *New Bedford Cordage Co.*, before cited, pp. 585-6. Shearman & Redfield on Negligence, § 94 and note. Mere knowledge or even appreciation of the danger would not in all cases lead to the conclusion that the servant had assumed the risk. If such were the condition of things at the beginning of the service, the inference would follow. But if the danger arose from subsequent neglect with an expectation that repairs would be made with due diligence, it would seem that the servant might continue work with no more assumption of risk than would follow from such delay only as due diligence, would allow, though undoubtedly if by neglect of the master dangers accumulate, the servant at his option may abandon the contract.

In the case at bar the plaintiff not only had knowledge of the defect complained of, but if we may believe the testimony was fully instructed in and cautioned against the changes. She, herself states in her cross-examination "I knew all about it, knew it was dangerous." She had also had the benefit of considerable experience in the business. But if this were all we might hardly feel justified in setting aside the verdict. The plaintiff was of a tender age; the jury saw her upon the stand and had full opportunity of judging of her intelligence and capacity, of appreciating the situation in which she was placed by what may be fairly assumed as the culpable negligence of the defendants. They also viewed the premises and saw the machinery as it was at the time of the accident, and though we discover no lack of intelligence on her part, from the reported testimony, their better opportunities may have justified their finding upon this point.

But this is not all. It is difficult to understand how the jury could have found that she, even for one of her age, was herself in the exercise of ordinary care. The testimony not only fails to show this affirmatively, but very clearly shows the contrary. That she had knowledge of the danger is conceded. This not only has

a bearing upon the nature of the contract, but is entitled to very grave consideration upon the question of due care. It is not conclusive in all, or perhaps in most cases. *Reed* v. *Northfield*, 13 Pick. 94. *Whittaker* v. *Boylston*, 97 Mass. 273. But it is often of great weight depending upon the accompanying circumstances. If as in *Coombs* v. *New Bedford Cordage Co.*, the plaintiff's attention is for the time withdrawn from the danger by the requirements of the employment, its probative force would be diminished. But in this case the plaintiff's employment at the time of the injury was such as necessarily to direct her attention to the danger. She was not using the machinery, so much as she was at work upon it, and if her attention was upon her work it must also have been upon that which caused the injury. Hence we can hardly account for the injury except upon the ground of inattention to her duties, as well as to the danger, the existence of which she was by no means ignorant.

But a matter more decisive of the plaintiff's right to recover is the fact that the only inference which can be drawn from the testimony is that her injury came to her while disobeying a rule adopted by the defendants regulating the very work in which the plaintiff was engaged. That the defendants had the right to make the rule is not denied. That it was reasonable and proper is evident from the fact that it was made for the protection of the operatives and if obeyed this injury could not have happened. It was in fact an indulgence to the servant. In relation to this matter, there is little or no conflict of testimony. The plaintiff by her own admission, fully understood that the frame was to be stopped at four o'clock for the purpose of cleaning the gearing. She says that did not give her time; but from her own testimony, as well as from that of others, there was an abundant time to clean the ends where the danger was, after the mill had stopped. Other parts of the frame could be cleaned with safety when the mill was running, this could not. She claims that she understood that she must clean it running, or "be sent out" if she stopped it, and says on one occasion she was so threatened.

But from her own statement it appears that she had stopped it out of time, and it does not appear that she stopped for the purpose

of cleaning the ends. The testimony so decidedly shows a want of due care on her part, and that the injury occurred while she was acting contrary to a regulation made for her own protection, that we conclude that the verdict of the jury was the result of a failure to comprehend the case, or of a prejudice so strong as to prevent a candid exercise of their judgment.          *Motion sustained.*

APPLETON, C. J., DICKERSON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.