EUPHROSINE LEDUKE, Respondent, *v.* ST. LOUIS AND IRON MOUNTAIN RAILROAD COMPANY, Appellant.

### November 20, 1877.

1. Where one, at the very moment when he knows a train is expected to arrive, goes upon a railroad track in front of an approaching train, which, by the proper exercise of his faculties, he must have seen and heard, the mere fact that the locomotive bell was not sounded as required by law will not make the railroad company liable for any damages which may result.

2. Where plaintiff seeks to hold defendant liable for an injury done, the burden is on him to show that defendant's negligence was the direct and proximate cause of the injury; and where the undisputed evidence shows that, though defendant was negligent, the causes which operated directly to produce the injury complained of are attributable to the plaintiff himself, there can be no recovery.

3. Where the issue made by the pleadings, and upon which the case was tried, was whether the injury was attributable to the failure of defendant to signal the approach of a train, and the undisputed evidence shows that it was not attributable to this cause, a verdict for plaintiff will be set aside as being without evidence to support it, though there be evidence tending to show that, but for the negligence of defendant in not reversing the engine, the injury might have been avoided.

4. Under a general allegation of negligence plaintiff cannot recover. Where the proof does not correspond with the allegations of the petition, plaintiff should ask leave to amend during the trial.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

THOROUGHMAN & WARREN, for appellant, cited: 64 Mo. 480, 487.

A. J. P. GARESCHÉ and S. W. LEAHY, for respondent, cited: *Kennerzoc* v. *Pacific R. Co.*, 45 Mo. 62; *Morris-*

*sey* v. *Wiggins Ferry Co.*, 47 Mo. 523 ; *Keegan* v. *Kavanaugh*, 62 Mo. 230.

HAYDEN, J., delivered the opinion of the court.

This is an action, under the statute, to recover damages for the death of plaintiff's husband, who was killed by a locomotive of the defendant, near where its track crossed Olive Street, in Carondelet. The deceased, Leduke, had for several years before his death lived in a house just east of the track, near this crossing, and diagonally opposite to his house, across the railway tracks, was a depot. To go to this depot, in the rear of which was a well, where he got his water, Leduke would pass up Olive Street, and in doing so was obliged to cross three railway tracks which intersected that street. At about eight o'clock in the morning of September 6, 1872, Leduke started with two buckets to get water, and found the east and centre tracks, which he had to pass, blocked by lines of stationary freight cars, which extended across the street, and for a considerable distance up and down the two tracks. The plaintiff's evidence tends to show that these cars, which were all coupled, had blocked the street up which Leduke wished to pass, for about an hour ; and, after waiting awhile, he climbed over the cars on the east, and got under the cars on the middle track. He came out from under the latter, on a platform which lay between the middle and west, or main, track, and, holding his bucket, or buckets, crossed this centre platform, and then attempted to cross the main track, which was between him and the depot platform. Up this main track, on its way to St. Louis, was coming a passenger train, the locomotive of which struck Leduke, apparently just before he had stepped over the last rail, as he was not run over, but thrown against the platform on the depot side of the track. It was a clear day, and the sun was shining.

Voerg, a witness for the plaintiff, who, from the depot side, saw the whole occurrence, — and whose evidence as to

facts now essential does not differ from that of the other witnesses in the case who saw Leduke just before and at the time the latter stepped upon the track, — testifies as follows : " Well, I saw him (Leduke) coming over the first car, and then he went under, and I saw him coming out from under — that was on the centre car. Then he crossed over, and this DeSoto train came up and threw him on our side, — hit him." * * * " The train was about ten to twelve feet off when he started across." The witness's evidence tends also to show that the middle platform was five or six feet wide, and almost level with the rails ; that this train usually arrived at this station, near where Leduke lived, at about the true time, and always stopped there ; that there was nothing to prevent Leduke's walking along the platform, and remaining in safety on it, between the tracks ; that, to a person looking down the main track, from Leduke's position, that track was visible for half a mile. The plaintiff's evidence tended to show that no bell was rung, or signal given, except that, immediately before Leduke was struck, short, sharp whistles were sounded ; that, as the train approached, the noise made by it was audible while the train was a considerable distance off.

The testimony of defendant's witnesses, who saw Leduke just before and when he went upon the track, tended, like that of Voerg, to show that Leduke was in safety when he was on the middle platform, and that if he had looked down the main track and listened he could have seen and heard the train while it was at a considerable distance from where he stood ; that he started to cross the main track when the locomotive was at a very short distance from him. The expression of one of these witnesses is : " It seemed to me that as he stepped upon the track the engine struck him." Another says that it was only a moment between the time he started to go across and the time he was struck. It appears that the train was about to stop at the station when Leduke was struck ; and, after striking him, moved but a

very short distance before it stopped at the station. The defendant demurred to the evidence. The demurrer was overruled, instructions given, which need not be set out, and a verdict rendered for the plaintiff in the sum of $5,000.

It must be conceded, for the purposes of this case, that there was negligence on the part of the defendant in failing to give the signal required to be given at crossings, that being a point in regard to which there is conflicting evidence. This failure and the act of defendant in keeping blocked up the two easterly tracks are the acts of negligence which are specifically charged in the petition. The answer denies these acts, denies that the death was caused by the carelessness of defendant in giving no signal, and alleges that the death was caused by Leduke's own negligence directly contributing to the injury. It is obvious that the plaintiff could not support the issues on her part by merely proving negligence of defendant in failing to give the signal. That was merely one link in the chain of proof. It is irrelevant to urge that the failure is negligence *per se;* the question is whether such negligence caused, or directly contributed to produce, the injury. The plaintiff's counsel attacks the decisions of the Supreme Court (*Harlan* v. *Railroad Co.*, 64 Mo. 480, and *Fletcher* v. *Railroad Co.*, 64 Mo. 484), and insists that where neither bell nor whistle is sounded as required by the statute (Wag. Stat. 310, sec. 26), persons have a right to presume that a train is not within eighty yards. Even if this were so, it would not advance the plaintiff's position; for it is obvious that the presumption cannot be indulged in without regard to circumstances. A man cannot cover up his eyes and ears and go upon a railroad track at the time a train approaches, and then hold a company liable because there is a law requiring it to ring a bell. This statute does not dispense with the necessity of the plaintiff's proving his case. If a plaintiff does not show the connection between the failure to comply with this regulation and the injury, the stat-

ute has no more to do with the case than would a statute requiring a railway train to carry so many axes or buckets. In every case where a plaintiff seeks to hold a defendant liable for an injury done, the burden is on the plaintiff to show the direct and immediate causes of the injury. If his own evidence shows that the acts alleged by him as the causes were superseded by intervening causes which directly operated to produce the injury, and that the causes which did produce the injury are attributable to the plaintiff himself, it is a matter not merely of technical law, but of reason, that he ought not to recover damages from another. The complaint of the plaintiff is that, in an investigation whose object is to get at the causes of given effects, remote circumstances, which only possibly and conjecturally might have had a bearing on the result, are discarded in favor of acts which directly preceded the event and without which it could not have happened. It is not a subject of just complaint that the law prefers the proximate and operating cause, and into this complaint the plaintiff's criticism upon the decisions which have been mentioned seems to resolve itself. Those decisions and *Maher* v. *Railroad Co.*, 64 Mo. 267, are only applications of rules well settled in the law of torts. Bull. N. P. 26 (a.) ; *Butterfield* v. *Forrester*, 11 East, 60.

While the evidence of the defendant tended to show that the three tracks ran parallel to each other, and that the main road-bed and track, from the station below up to the station where the occurrence took place, were straight; that to a person looking down this main or western track, from the platform on either side of it, there was no obstruction to the view, and that a coming train could be seen for a long distance; there was, on the other hand, no evidence tending to show the contrary on the part of the plaintiff. It is only by confusing the case, and confounding obstructions upon the eastern and middle tracks with obstructions upon the western track, up which the passenger train was com-

ing, that support can be obtained for the allegations of
the petition as to the blockade.   The petition, indeed,
charges that as Leduke emerged from one train he was sud-
denly and violently knocked down by another, and thereby
killed.   But the plaintiff's evidence shows, and that of the
defendant confirms, that as Leduke emerged he did not
come upon the western track, but upon a platform, and
that if he had remained upon this platform he would have
been in safety.   In considering the causes which produced,
or directly contributed to, the death, the blockade on the
eastern and middle tracks must be eliminated, for, as
Leduke stepped upon the platform, he was in perfect
safety.   The blockade had been passed, the cars which com-
posed it were behind him.   They had no more causal rela-
tion to the injury than obstructions which might have
embarrassed him in passing out from his own yard.   He
was on the platform, where he could have remained, upon
which he could have walked in safety to the north, or stood
still while the train passed ; and from this platform his view
down the western track was unobstructed, except so far as
the approaching train itself obstructed the view.   It is clear
from the whole evidence that if he had listened he could
have heard the approaching train, and that a turn of the
head and a glance down the straight track would have
shown him that the train was coming.   The plaintiff's evi-
dence tends to show that Leduke knew that the train arrived
at the station about that hour, and that he knew that it
stopped at the station.   With his opportunities of observa-
tion, if he did not in fact know the train was approaching,
and take the risk of crossing, still as irresistible an infer-
ence of negligence is raised as if he did voluntarily take
that risk.   In either case, there was, under the issues on
which the plaintiff went to the jury, nothing for the jury to
pass upon, the tendency of the whole evidence being that
the negligence of the deceased directly and substantially
contributed to cause the death.

We say under the issues on which the plaintiff went to trial; for the plaintiff now raises a question which is outside of those issues, and which, it appears, was not tried in the court below. It appeared from defendant's testimony that the engineer upon the locomotive saw Leduke before and at the time when the latter went upon the track; and the plaintiff now contends that there is evidence tending to show that the engineer could have reversed the engine, and, as it appears that steam was shut off and the train almost at a stop, could in this way have prevented the result. But even if this is so, the case must be remanded. As the plaintiff presented and the defendant joined issues, the defendant should have had judgment, for he maintained the issues, and it would be obviously unjust to conclude him here by allowing issues to be raised which he never had an opportunity of meeting. The plaintiff did not ask to amend his petition, but went to trial on two specifications of negligence, both of which defendant met. Under a general allegation of negligence the plaintiff cannot recover, for this gives defendant no notice of facts, and is only a conclusion. The point now made by the plaintiff would present entirely different issues from that upon which the case below was tried, and would require different instructions, as may be seen from the following, which the court gave : " Unless the jury believe from the evidence that the death of M. J. Leduke, on the 6th of September, 1872, was caused by the negligence of defendant, its servants, employees, in failing to signal or give warning of the approach of the train, by the locomotive attached to which he was killed, they will find for the defendant." This, and the instruction in regard to the statutory signal, which instruction was given at the plaintiff's request, show clearly on what theory the case was tried.

Under these instructions the jury must have found that the death was caused by the failure to signal. The instruction goes back to the issues, and by the petition we know

definitely what failure to signal is meant. The plaintiff, as well as the defendant, proved that the death was not attributable to the failure to give such signal, and the case shows that the verdict thus found upon the issue is wholly unsupported by evidence, and should have been for the defendant, not for the plaintiff.

The judgment is reversed and the case remanded. All the judges concur.