## O'NEIL *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RY. CO.

*(Circuit Court, E. D. Missouri.* November 2, 1881.)

1. PRACTICE—DEMURRER TO EVIDENCE.

   If there is conflicting evidence on which the jury should pass, the court cannot draw to itself the decision of what the evidence or the weight of evidence establishes.

2. MASTER AND SERVANT—NEGLIGENCE.

   An employer who introduces, without notice to his employe, new and unusual machinery, whether belonging to himself or another, involving an unexpected or unanticipated danger, through the introduction of which the employe, while using the care and diligence incident to his employment, meets with an accident, is liable in damages.

3. SAME—SAME—PLEADING.

   Where an accident occurs to a railroad employe in consequence of the introduction of a foreign and defectively-constructed car into the train on which he is employed, and he sues the railroad company for damages, he is not bound to allege in his petition that the accident was caused by the introduction of a foreign car.

The plaintiff avers in his petition that, at the time of the accident therein referred to, he was a brakeman in the employment of defendant; that while, in the performance of his duties as such, he was coupling a car, used and operated by defendant at the time, to a certain engine of the defendant, his hand and arm were caught between the car and engine, and crushed and lacerated so that it was necessary to amputate it between the elbow and wrist, and that it was amputated; that said injuries were caused by the defective, unsuitable, and dangerous apparatus and appliances for coupling said engine and car together; that the dead-woods on said car and engine were insufficient and unstable, and dangerous to plaintiff whilst coupling, by reason of their not keeping said car and engine apart and allowing the draw-heads of the engine and car to interlap, thereby catching and crushing plaintiff's arm and hand as aforesaid; that plaintiff was ignorant of the dangerous condition of the appliances for coupling said engine and car together, and that neither defendant nor its agents informed him thereof; and that his injuries were caused by the negligence of defendant in supplying him with unsuitable, defective, and dangerous appliances with which to work in the discharge of his duty, and without any negligence on his part.

The case came on for trial October 13, 1881. It was tried before a jury, *Treat* D. J., presiding. The testimony of witnesses produced on behalf of the plaintiff tended to prove the allegations of the peti-

tion. The defendant proved that the car in question did not belong to it, but was a foreign car. At the close of the evidence defendant asked the court to instruct the jury that, under the evidence and pleadings in the case, plaintiff could not recover; but the instruction was refused.

TREAT, D. J., thereupon charged the jury as follows:

*Gentlemen of the jury:* It is proper, in the consideration of this case, that you should bear in mind the difference in law between the obligations of an employer to an employe, and the obligations of a railroad to a stranger. In the latter case the utmost degree of diligence is required—extraordinary diligence. The case before you involves a few propositions of law in the light of which you should consider the testimony; these propositions being, in the first place, that an employe who undertakes work, though the same may be of a dangerous character, is supposed to be competent to the discharge of that duty, assuming for himself all ordinary risks connected therewith; *second,* that the employer, to-wit, the railroad company, as in this case, must furnish him with reasonably and adequately safe appliances for the performance of his duties. Railroads, as in the case before you, are bound to receive cars from other roads, to handle them, and to haul them, and a brakeman or other employe of the defendant road is supposed to know that cars of different construction, and, possibly, of different modes of coupling, will be used in the conduct of the business of the railroad company; and the brakeman or other employe, though those cars coming onto the road may be more or less dangerous than the ordinary cars, is supposed to be competent to attend to his business, notwithing such cars are used. In other words, this is not a question of comparison between freight cars of the Iron Mountain Railroad, owned by itself, and other cars that it may haul over its road in connection with its respective trains. Behind that rests the main inquiry: Did this defendant road—no matter whether the car was a foreign car—put into its train a car which was not reasonably and adequately safe for the purpose for which it was used, in connection with the duties which the servants had to perform? In other words, though there might be differences in the construction of foreign cars, as compared with the cars belonging to the Iron Mountain Railroad itself; though there might be different degrees of danger connected with the handling of the different cars; yet this defendant was bound that no car, whether its own or a foreign car, should be otherwise than reasonably and adequately safe for its employes to handle and to manage in the ordinary conduct of their business. Consequently the strain in this case seems to be this: Was this car of which you have heard not adequately safe to be put into the train, whereby an employe,—a brakeman, for instance,—in undertaking to make the coupling, could not, by the exercise of ordinary care and skill on his part, escape accident? Of course, every one engaging in a particular business, employed therefor, is presumed—is bound in law—at his own hazard to exercise ordinary care and diligence with respect to the employment in which he is engaged. He is presumed to be competent therefor; yet, on the other hand, his employer—as a railroad, for instance—is bound on its part to furnish him with reasonably safe and adequate appliances, whereby, in the exercise of

ordinary care, he would not encounter accidents of the nature described to you.    The case, then, may be narrowed down to this: the plaintiff is entitled to recover, if, exercising ordinary care and diligence in the nature of the employment in which he was engaged, he, through the unreasonably inadequate and unsafe character of the car mentioned, incurred this accident.

If, through this neglect of the defendant company in furnishing such inadequately safe contrivances, without any negligence on his part, he incurred this danger, he is entitled to recover, and the measure of his compensation will be such as in your judgment he ought to receive in consequence of the injury, taking into consideration the nature and extent thereof, where there are no other special damages alleged in the case.    On the other hand, if the damage was caused simply by his own negligence or failure to exercise ordinary care in the employment, the nature of which has been described, he cannot recover. If I have made myself understood, this company had the right to haul over its road cars not belonging to it—foreign cars, as they are called.    These cars might differ in construction, and might differ in the degree of danger attending their handling or management; yet, if the accident occurs from their being not reasonably safe or adequate, under any circumstances, for the business for which they are employed, and the accident occurs without the negligence of the employe, the company must respond thereto.    If, on the other hand, the employe, through his own negligence, meets with an accident growing out of his handling or attempting to handle cars that are reasonably and adequately safe, then the accident is at his own cost, for which there would be no redress. Determine then, gentlemen,—*First*, was this car reasonably and adequately safe for the employes in the handling of the same.    If not, did the plaintiff, through carelessness or negligence, contribute to the accident which he sustained?    If the car was not adequately safe, and he was not negligent in performing the duty assigned him, he is entitled to recover.    If, on the other hand, the car was adequately safe, and the accident occurred to him through his failure to exercise the proper degree of care in the work in which he was employed, he cannot recover.    It is a compound question always, gentlemen, —*First*, the neglect of the defendant; *secondly*, the contributory neglect of the plaintiff.    Of course, it devolves on the defendant, in cases of this character, if the plaintiff has made out that the car was not adequately safe in respect of the management thereof—I say, it is the duty of the defendant to show that plaintiff's negligence contributed to the accident.

The jury brought in a verdict for the plaintiff.    The defendant made a motion for a new trial, and in arrest of judgment, upon which the following opinion was delivered:

*T. S. Rudd* and *A. R. Taylor*, for plaintiff.

*Thoroughman & Pike*, for defendant.

TREAT, D. J.    The plaintiff sued the defendant for damages caused by the alleged negligence of the defendant.    A trial was had, and verdict rendered for plaintiff.    The defendant has filed motions for new trial and in arrest.    The plaintiff was an employe of the defendant, and the accident occurred while he was engaged in the scope of

his employment, viz., as brakeman, in coupling cars on a freight train. The evidence at the trial was conflicting. It seems that the defendant railway, in the discharge of its duties, was accustomed to receive, couple, and haul on its trains cars belonging to other railroads whose bumpers or dead-woods and coupling appliances were different from its own; but that "a foreign car" of the P. R. R., of peculiar construction as to its dead-wood and couplings, was seldom received and placed in defendant's trains. "Foreign cars," sent forward by the P. R. R. road, differing from defendant's cars, yet differing from those of the P. R. R., were frequently hauled over the defendant road as part of the latter's trains. It was evident from the testimony that different degrees of danger to operatives existed when one or the other of such foreign cars was used, and the testimony was in conflict as to which the foreign car was, which was introduced into the train in question.

At the close of the evidence defendant demurred, on the ground that the case, as fully presented, did not establish plaintiff's right to recover. It is admitted that, even at the close of evidence offered on both sides, the court can instruct the jury that the plaintiff cannot recover; yet if there is conflicting evidence on which the jury should pass, the court cannot draw to itself the decision of what the evidence or the weight of evidence establishes. If this were not so the court would usurp the province of the jury.

It is contended in arrest that while the petition sets out with particularity the circumstances under which the accident occurred, it failed to state that the car in question was a "foreign car." The averment is that "while plaintiff, etc., was coupling a *certain* car, used," etc., the accident happened "through the negligence of the defendant in supplying to plaintiff said car, defectively and improperly constructed, and in failing to inform plaintiff of the improper construction of said car; that said car was constructed in an unusual and improper manner, in that the dead-woods extended out too far, so as to render the work of coupling the engine to said car extremely dangerous," etc. The petition further alleges the unusually dangerous condition of the train from placing therein such a car without notice to the employe, etc.

If this court accepts as a rule of pleading the views expressed in *Leduke* v. *St. Louis & Iron Mountain R. Co.* 4 Mo. App. 491, still this case would not fall within its purview. The plaintiff was not bound to aver that the accident was caused by the introduction of a "foreign car" into the train; and still further, if such a fact became material

on the trial of the cause, the rules as to variance would have prevailed, and the doctrine of jeofails after verdict.

The law as to employer and employe in such cases, laid down by this court at the trial, was the same as declared by the United States supreme court, and was given in the precise language of that court; yet to avoid misapprehension by the jury, the doctrines stated by Judge Cooley in *Mich. Cent. R. Co.* v. *Smithson,* 7 N. W. Rep. 791, were repeated and amplified. Still it is contended that, in the light of the rulings in *Porter* v. *Hannibal & St. Joe Railroad,* 71 Mo. 68, this court omitted to charge that the plaintiff was entitled to recover if he could not have known of the danger by the exercise of proper care, however defective the appliances may have been. A careful examination of the latter case shows that it contains only well-established doctrines, which, if applied to this case, would lead to the same result already reached.

It is of great importance to hold employes on railroad trains to the fullest measure of duty, for on their skill and fidelity life and property depend; and it is equally important for their protection that their employers shall furnish them with reasonably adequate and safe appliances whereby they can perform their duties with safety to themselves and to the lives and property at stake. To relax the rules so that the employer may escape liability, would be as detrimental to public interests as if the rules by which the employe is to be governed were to be relaxed in favor of the latter. An employe, as charged in this case, must be supposed to know the nature of the employment, and to possess the skill and diligence requisite for the proper discharge of his duties. He takes the hazard of the employment. Still, if the employer introduces, without notice to the employe, some new and unusual machinery involving an unexpected or unanticipated danger, through the introduction of which the employe, while using the care and diligence incident to his employment, meets with an accident like that in question, it is not unreasonable to hold that the employer should answer therefor in damages.

Both motions are overruled.

### NOTE.

MASTER'S LIABILITY TO SERVANT—GENERAL RULE. That a servant cannot hold his master responsible for injuries resulting from the negligence of fellow-servants, because this is a risk he has assumed, has remained the rule of law in England ever since the case of *Priestley* v. *Fowler,* 3 Mees. & W. 1; and the leading case of *Farwell* v. *Boston, etc., R. Co.* 4 Met. 49, announcing the same rule, has been followed without dissent in this country. But the

responsibility of one person to another, for the consequence of personal negligence, is not lessened by the existence of the relation of master and servant. Said *McCrary*, C. J., in the late case of *McMahon* v. *Henning*, 3 FED. REP. 353, arising upon facts like those of the principal case: "The true doctrine of the common law is that the master is liable to his servants, as much as to any one else, for the consequences of *his own* negligence; and it is no defence for him to show that the neglegence of a fellow-servant contributed to bringing about the injury." Such personal negligence of the master may consist, either in the failure to employ fit and competent servants, or to furnish suitable and safe machinery, structures, appliances, and materials for their use.

MASTER'S DUTY IN SELECTION OF MACHINERY. In the selection of machinery, etc., it is the duty of the master to use reasonable or ordinary care, and this care he must exercise, both in procuring and maintaining sound and safe structures and appliances. If he knows, or in the exercise of due care might have known, that they are unsafe or insufficient, either at the time of procuring them or at any subsequent time, he fails in his duty. *Gilman* v. *Eastern R. Co.* 13 Allen, 440; *Bartonshill Coal Co.* v. *Reid*, 3 Macq. 266; *Noyes* v. *Smith*, 28 Vt. 59; *Sullivan* v. *Louisville Bridge Co.* 9 Bush. 81; *Kansas, etc., R. Co.* v. *Little*, 19 Kan. 269; *Lewis* v. *St. Louis, etc., R. Co.* 59 Mo. 495; *Mad River R. Co.* v. *Barber*, 5 Ohio St. 541. The master is equally chargeable, whether the negligence was in originally failing to provide or in afterwards failing to keep the machinery in safe condition. *Ford* v. *Fitchburg R. Co.* 110 Mass. 240; *Shanny* v. *Androscoggin Mills*, 66 Me. 420; *O'Donnell* v. *Allegheny, etc., R. Co.* 59 Pa. St. 239; *Chicago, etc., R. Co.* v. *Swett*, 45 Ill. 197; *Cooper* v. *Central, etc., R. Co.* 44 Iowa, 134.

"ORDINARY CARE" — WARRANTY OF SOUNDNESS — BEST AND SAFEST MACHINERY. What will be ordinary care depends on the nature of the business, its extent, degree of hazard involved, and all the circumstances of the case. Said *Thomas*, J., in *Cayzer* v. *Taylor*, 10 Gray, at page 280: "What is ordinary care cannot be determined abstractly. It has relation to and must be measured by the work or thing done, and the instrumentalities used, and their capacity for evil as well as good. What would be ordinary care in one case may be gross negligence in another. We look to the work, its difficulties, dangers, and responsibilities, and then say, what would and should a reasonable and prudent man do in such an exigency?"

The law does not exact from the master the exercise of the highest degree of diligence in supplying safe machinery for the use of the servant; ordinary care is sufficient. *Cooper* v. *Central, etc., R. Co.* 44 Iowa, 134; *Nolan* v. *Shickle*, 3 Mo. App. at page 307; *Paterson* v. *Wallace*, 1 Macq. 748; *Holden* v. *Fitchburg R. Co.* 129 Mass. at page 277. But see *Toledo, etc., R. Co.* v. *Conroy*, 68 Ill. 560, holding a railroad corporation bound to exercise the highest degreee of care in the construction of its road and bridges, and that ordinary prudence in such case was not sufficient.

There is no implied *warranty* in the contract of service that the machinery or materials furnished shall be sound or fit for service, nor that the servant shall not be exposed to extraordinary risks. *Heyer* v. *Salsbury*, 7 Bradw. (Ill. App.) 93. The master does not guarantee the soundness of the machinery, nor insure the servant against accidents, and if the latter suffers injury from latent

defects unknown to the master and not discoverable in the exercise of ordinary diligence, the master is not responsible. *Fifield* v. *Northern R. Co.* 42 N. H. 225; *Ormond* v. *Holland*, El., Bl. & El. 102; *L. R. & F. S. Ry. Co.* v. *Duffey*, 35 Ark. 602; *Galveston, etc. R. Co.* v. *Delahunty*, 53 Tex. 206; *Flynn* v. *Beebe*, 98 Mass. 575; *Ladd* v. *New Bedford R. Co.* 119 Mass. 412; *Gibson* v. *Pacific R. Co.* 46 Mo. 163.

The master is not bound to use only the safest and best machinery. That is, aside from the legal effect of the servant's knowledge of the risk, it is not negligence *per se* in the master to continue the use of machinery or materials known by him to be less safe than other machinery or materials he might use for the same purpose. Thus, in *Wonder* v. *Baltimore, etc., R. Co.* 32 Md. 411, where it was shown that the plaintiff, a brakeman, would not have been injured had a certain improved brake been used, the court said: "A master is not bound to change his machinery in order to apply every new invention or supposed improvement in appliances, and he may even have in use a machine or an appliance for its operation shown to be less safe than another in general use, without being liable to his servants for the consequences of the use of it." *Michigan C. R. Co.* v. *Smithson*, 7 N. W. Rep. 791; *Hayden* v. *Smithville Manuf'g Co.* 29 Conn. 548; *Fort Wayne, etc., R. Co.* v. *Gildersleeve*, 33 Mich. 133; *Smith* v. *St. Louis, etc., R. Co.* 69 Mo. 32; *Cooper* v. *Central R. Co.* 44 Iowa, 134. On the other hand, it was held in *St. Louis, etc., R. Co.* v. *Valirius*, 56 Ind. 511, that it was negligence in a railway company to use cars dangerous in construction when it could procure others not dangerous, and that it must procure the best or be held responsible. See, also, *Dorsey* v. *Phillips & Colby Construction Co.* 42 Wis. 583, at page 597; *Toledo, etc. R. Co.* v. *Asbury*, 84 Ill. 429.

DELEGATION OF MASTER'S DUTY TO AGENT OR SERVANT—SERVANT'S NEGLIGENCE IMPUTABLE TO THE MASTER. Where an employer attends personally to the supply and repair of the machinery, the question for the jury is, did he exercise reasonable care in the performance of his duty to the servant to select sound and suitable machinery, and to keep the same in repair? When the employer does not do this in person, but, as is often the case with individuals, and always the case with corporations, delegates the duty of selecting and repairing the machinery to his agent or servant, what is the question for the jury in this case? Does the question become, as maintained by some text writers, did the master exercise reasonable care in the selection of the *servant* to whom he delegated the duty of selecting and repairing the machinery? Said Lord Cairns, in *Wilson* v. *Merry*, L. R. 1 Sc. App. 326: "But what the master is, in my opinion, bound to his servant to do, in the event of his not personally superintending and directing the work, is to select proper and competent persons to do so, and to furnish them with adequate materials and resources for the work. When he has done this he has, in my opinion, done all that he is bound to do. And if the persons so selected are guilty of negligence, this is not the negligence of the master." If such is the true rule of law, then corporations could seldom be held responsible for injuries to employes from defective machinery; and, in the language of *Byles*, J., in *Clarke* v. *Holmes*, 7 H. & N. 937, "the more a master neglects his business and abandons it to others the less will he be liable."

Does not the question for the jury remain the same, whether the master attends personally to the supply and repair of machinery or appoints others to do it? Did he exercise due care in supplying the *machinery?* It is well settled that the duty of the master to use due care in the selection of competent servants is not *necessarily* discharged by the appointment of a competent agent to select the servants, and it is difficult to see why the same rule does not apply in the selection of machinery. *Flike* v. *Boston, etc., R. Co.* 53 N. Y. 549, *Church,* C. J., at page 553; *Quincy Mining Co.* v. *Kitts,* 42 Mich. 34. It may be due care on the part of the master to delegate the duty of attending to the supply and repair of machinery to a competent agent; it might be gross negligence in him to attempt to do it himself. "But he is bound to use reasonable care, having regard to the nature of the business and the circumstances of the case, to secure their safety and sufficiency." *Holden* v. *Fitchburg R. Co.* 129 Mass. 268.

"We understand," say the court, in *Fuller* v. *Jewett,* 80 N. Y. 46, "that acts which the master, as such, is bound to perform for the safety and protection of his employes cannot be delegated so as to exonerate the former from liability to a servant who is injured by the omission to perform the act or duty, or by its negligent performance, whether the nonfeasance or misfeasance is that of a superior officer, agent, or servant, or of a subordinate or inferior agent or servant to whom the doing of the act or the performance of the duty has been committed. In either case, in respect to such act or duty, the servant who undertakes or omits to perform it is the representative of the master, and not a mere co-servant with the one who sustains the injury." And the court held that the duty of maintaining machinery in proper repair devolved upon the master, and he was liable for injuries resulting from a failure to perform it. "The master cannot delegate his duty to select competent servants and safe machinery to another. He must use reasonable care in performing these acts. * * * If the immediate negligence in these cases is that of an agent or servant, and a co-servant is injured thereby, the law imputes the negligence to the master, and the master is liable the same as if the injury had been sustained by a stranger." *Booth* v. *Boston, etc., R. Co.* 73 N. Y. 38.

Every railroad operator owes to his employes a duty to furnish machinery adequate and proper for the use to which it is to be applied, and to maintain it in like condition, and he is liable for injuries resulting from failure to perform this duty, whether the act was due to personal neglect or the neglect of an agent employed by him. *Kain* v. *Smith,* 80 N. Y. 458; *Kirkpatrick* v. *N. Y. Central R. Co.* 79 N. Y. 240. And this is the law of Massachusetts. In *Gilman* v. *Eastern R. Co.* 13 Allen, 440, the court say: "He [the master] cannot divest himself of his duty to have suitable instruments of any kind by delegating to an agent their employment or selection, their superintendence or repair. A corporation must, and a master who has an extensive business often does, perform this duty through officers or superintendents; but the duty is his, and not merely theirs, and for negligence of his duty in this respect he is responsible." Said *Gray,* C. J., in *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572: "The duty of providing suitable machinery to carry on their business, and a suitable place for the plaintiff to work in, including giving him full notice of the nature of the risks attending the service, was a

responsibility resting upon the defendants, [employers,] which they could not throw off by delegating it to a foreman or to other workmen." This has been declared to be the law in a large number of cases. *Hough* v. *Pacific Ry. Co.* 100 U. S. 213; *Flike* v. *Boston, etc., R. Co.* 53 N. Y. 549; *Laning* v. *N. Y. Cent. R. Co.* 49 N. Y. 521; *Ford* v. *Fitchburg R. Co.* 110 Mass. 240; *Holden* v. *Fitchburg R. Co.* 129 Mass. 268; *Arkerson* v. *Dennison,* 117 Mass. 407; *Drymala* v. *Thompson,* 26 Minn. 40; *Wedgwood* v. *Chicago, etc., R. Co.* 41 Wis. 478; S. C. 44 Wis. 44; *Shanny* v. *Androscoggin Mills,* 66 Me. 420; *Mullan* v. *Phil. S. Co.* 78 Pa. St. 25; *O'Donnell* v. *Alleghany, etc., R. Co.* 59 Pa. St. 239; *Chicago, etc., R. Co.* v. *Swett,* 45 Ill. 197; *Lewis* v. *St. Louis, etc., R. Co.* 59 Mo. 495; *Kansas, etc., R. Co.* v. *Little,* 19 Kan. 269; *Berea Stone Co.* v. *Kraft,* 31 Ohio St. 287. Thus, in *Toledo, etc., R. Co.* v. *Conroy,* 68 Ill. 560, where a servant of the company was injured in consequence of the giving way of a wooden bridge, which had become defective through age and exposure to the weather, it was held that the company could not escape liability by showing that the bridge was properly constructed in the first place, and that it employed skilful and competent subordinates to inspect and repair its bridges. The same rule applies to the individual employer as well as to corporations. *Corcoran* v. *Holbrook,* 59 N. Y. 517.

But there are authorities which hold that the duty of the master is discharged by the employment of competent agents or servants to furnish the machinery and attend to repairs, and that if a servant is injured through the failure of the persons so appointed to make repairs, it is the negligence of a fellow-servant, and the master is not liable. *Columbus, etc., R. Co.* v. *Arnold,* 31 Ind. 174; *Wonder* v. *Baltimore, etc., R. Co.* 32 Md. 411; *Hanrathy* v. *Northern, etc., R. Co.* 46 Md. 280; *Harrison* v. *Central R. Co.* 31 N. J. L. 293.

CONTRIBUTORY NEGLIGENCE OF FELLOW-SERVANT. If the master is himself negligent, and the negligence of a fellow-servant of the injured contributes to the accident, this does not exempt the master from liability; it is only the negligence of the injured servant that will have that effect. Thus, in *Paulmier* v. *Erie R. Co.* 34 N. J. L. 151, where the company negligently allowed the erection of an unsafe trestle-work for the track, and gave the engineer in charge orders not to run his engine thereon, but he disobeyed, and the plaintiff's intestate, a fireman, who was unaware of the orders or of the danger, was thereby killed, the trestle-work giving away, the company were held liable. If a servant is injured in part by the negligence of the master and in part by the negligence of a fellow-servant, he may recover of the master. *McMahon* v. *Henning,* 3 FED. REP. 353; *Cone* v. *Delaware, etc., R. Co.* 81 N. Y. 206; *Booth* v. *Boston, etc., R. Co.* 73 N. Y. 38; *Crutchfield* v. *Richmond, etc., R. Co.* 76 N. C. 320.

LATENT DEFECTS IN MACHINERY—DUTY OF MASTER TO INFORM SERVANT. As before stated, the master may, if he so chooses, supply unsafe machinery. "Every manufacturer has a right to choose the machinery to be used in his business, and to conduct that business in the manner most agreeable to himself, provided he does not thereby violate the law of the land." *Hayden* v. *Smithville Manuf'g Co.* 29 Conn. 548. If the defect or danger is latent, and either known to the master, or of such a character that in the exercise of ordinary care he ought to have known it, it is the

duty of the master to inform the servant of its existence. He must either use machinery free from latent dangers, or inform his servant of the existence of such as he either knows or ought to know. *Smith* v. *Oxford Iron Co.* 42 N. J. L. 467; *Sowden* v. *Idaho Mining Co.* 55 Cal. 443; *Wedgwood* v. *Chicago, etc., R. Co.* 41 Wis. 478; S. C. 44 Wis. 44; *Cummings* v. *Collins,* 61 Mo. 520; *Gibson* v. *Pacific R. Co.* 46 Mo. 163; *Fairbank* v. *Haentzche,* 73 Ill. 237; *Paulmier* v. *Erie Ry. Co.* 34 N. J. L. 151; *Walsh* v. *Peet Valve Co.* 110 Mass. 23; *Spelman* v. *Fisher Iron Co.* 56 Barb. 151.

In *Smith* v. *Oxford Iron Co.,* *supra,* the defendant company introduced into use in its mine a new blasting powder known by its president to be a much more dangerous explosive than the powder before in use. It was held that it was the duty of the company to have informed the plaintiff, a miner, of the danger, and of the proper manner of using the powder; and, not having done so, it was liable to him for injuries sustained while using it. But while the master must use ordinary care to provide reasonably safe and fit appliances and structures for the use of the servant, yet he is not bound to provide against the danger arising from the unnecessary use of such appliances and structures for purposes to which the same are not adapted and designed. *Chicago, etc., R. Co.* v. *Abend,* 7 Bradw. (Ill.) 130; *Felch* v. *Allen,* 98 Mass. 572; *Durgin* v. *Munson,* 9 Allen, 396.

RIGHT OF MASTER TO CONTRACT WITH SERVANT FOR EXEMPTION FROM LIABILITY. The question of the right of the master, by an express stipulation in the contract of hiring, to exempt himself from all liability to his servants for the consequences of failure to perform his duty of supplying sound machinery and competent servants, is not settled by the authorities. It would seem, however, that the same public policy that will not allow a common carrier to contract for exemption from the consequences of his negligence, would forbid such contracts between master and servant, especially when their inequality of position is considered. Said *Crompton, J.,* in *Clarke* v. *Holmes,* 7 H. & N. 937: "It cannot be made part of the contract that the master shall not be liable for his own negligence." And in *Harrison* v. *Central R. Co.* 31 N. J. L. 293, the court say: "The claim to such exemption is inconsistent with morality and public policy; so much so, indeed, that it might be somewhat questionable whether, if such contract existed in point of fact, and by express stipulation, it would not be on that account void."

There are but two cases that have come to our notice in which this question has been decided: In *Western & Atlantic R. Co.* v. *Bishop,* 50 Ga. 465, it was held that such a contract was valid, although it may be noticed that it was not necessary to the decision, the plaintiff having been guilty of contributory negligence; and the court further express the opinion that the employer would be liable for utter recklessness or gross negligence, notwithstanding such contract. In a recent case decided in the United States circuit court for the district of Indiana, (*Roesner* v. *Hermann,* 8 FED. REP. 782,) *Gresham,* D. J., delivered an oral opinion holding that a contract between employer and employe, whereby the employe, in consideration of the employment, agrees to release and discharge his employer from all damages on account of accident or death to the employe caused by the negligence of his employer or co-employes, is void as against public policy. W. E. BENJAMIN.