THE TEXAS AND PACIFIC RAILROAD CO. V. ROBERT CASEY AND WIFE.

1. PLEADING. — In a suit for damages against a railway company for alleged injury sustained by a passenger on account of the rude, wanton, and malicious conduct of the acting conductor of its train in putting her off a railway-car, there was no averment, in terms, that the

conductor was an agent or servant of the company : *Held,* The peti-
tion being in other respects good, was not bad on general demurrer.

2. NEW TRIAL—PRACTICE.—While the Supreme Court will not reverse
a judgment based upon a verdict approved below, where the testi-
mony is conflicting, unless the error is clear, it is the duty of the dis-
trict judge, who has better opportunities to determine the relative
weight of the evidence, to enforce fearlessly a new trial in a proper
case.

3. STATUTE CONSTRUED—RAILWAY COMPANY.—By the words "any
usual stopping-place," as used in the statute, (Paschal's Dig., art.
4892,*) was meant either a regular station, or any other place which
a railroad company expressly, by public notice or otherwise, or im-
pliedly by user for such purpose, had designated as a proper place for
passengers to get on or off its trains, and where they would in conse-
quence thereof have the right to demand the exercise of this privilege.
A place at which a train is stopped for wood or water only, is not "a
usual stopping-place" in contemplation of that section.

4. CHARGE OF COURT—PRACTICE.—Although a charge of the court
may be objectionable, in a civil case the error will not be sufficient to
require the reversal of the judgment, if the attention of the court was
not called to the error, either by exception or by asking a proper
charge.

5. FACT CASES.—See statement of the case for facts held sufficient to
authorize a verdict for actual damages for $2,500, against a railway
company, for illegally ejecting a passenger from its car.

6. DAMAGES—PRACTICE.—Though the proper practice, when actual and
exemplary damages are claimed, is to require the jury to discriminate
as to the character of damages found in their verdict, a failure to do
this will not, of itself, authorize the reversal of the judgment when the
point is for the first time raised in the Supreme Court.

7. EVIDENCE—PRACTICE.—Permitting the husband to testify in a dam-
age suit brought by the wife, whether error or not, will not be con-
sidered when urged for the first time on appeal.

APPEAL from Marion. Tried below before the Hon. B. T.
Estes.

Mary Casey, on the 1st of October, 1874, entered the cars
of the Texas and Pacific Railroad Company at Jefferson to go
to Moore's Landing. After taking her seat on the cars, and
before they had proceeded far, the conductor demanded to

---

*This provision of the old law was omitted from the Code by the codi-
fiers, and by the Legislature which adopted the new Code.

know of her if she had a pass permitting her to ride on the cars. She replied that she had not, and was at once put off the cars by the conductor, at or near a water-tank. She brought suit against the company, and in her petition alleged that she was about to explain to the conductor the reason why she had no written pass, which was that her husband, being in the employment of the defendant, she had been passed free to Jefferson, and had been told that she would be permitted to return free; that the conductor refused to receive her explanation, and at once put her off the cars, as she alleged, in a rude, wanton, and malicious manner. She alleged that she, with her infant child, was put off the cars against her will, in the presence of a large number of passengers, which greatly mortified her, and that she was greatly frightened and had to walk some two or three miles, in consequence of which she was greatly injured; that she, in consequence, suffered from a miscarriage and the premature birth of a child, &c.; that she was confined for nearly a month, and that continued ill-health was produced, so that up to the time of filing the amended petition (February 20, 1875) she had not fully recovered.

The original petition prayed for judgment for $500 actual damages, and for $5,000 additional for injury to feelings, mortification, and disgrace. In the amended petition the wife prayed for judgment for $5,000 damages, in addition to the sums prayed for in the original petition, without stating whether they were claimed as actual or punitory.

December 28, 1874, defendant filed general demurrer, not guilty, and general issue. The defendant's general demurrer was overruled. May 1, 1878, the case was tried before a jury, and verdict rendered for the plaintiffs for $2,500. The testimony of Mrs. Casey sustained the allegations of her petition, though there was conflicting evidence as to the bearing of the conductor and the extent of her injuries. The verdict simply found for plaintiffs, and assessed "the damages at $2,500." Judgment on the verdict for plaintiffs. The charge of the court as to the character of stopping-places at which a railroad

company can eject a passenger, will be found in appellant's brief.  A motion for new trial was overruled, and the defendant appealed.

On the question of damages the court charged as follows:

"The acts and trespasses complained of by plaintiffs are charged to have been done immediately by the conductor in charge of the car referred to, and whatever may be your feeling as to his conduct, it is not charged that defendant ratified the acts or was directly guilty of fraud, malice, gross negligence, or oppression.  You cannot, therefore, find for plaintiffs punitory or exemplary damages; but in case you find for plaintiffs, you are instructed to find only such actual damages as the evidence satisfies you were suffered by them pecuniarily and in feelings, injuries, and sufferings resulting from an unlawful act.  To entitle plaintiffs to recover damages, you should be satisfied from the evidence that plaintiff, Mary Casey, was wrongfully removed from the car by defendant's conductor, or, if properly and lawfully removed, whether the act of removal was done by the conductor maliciously, or done violently, or with indignity and injury to the person.  If the evidence shows that plaintiff, Mary Casey, was on the train of defendant, and had no pass or right to ride thereon without pay, and refused to pay her fare thereon when the same was demanded by the conductor, then the conductor had the lawful right to remove her from the train, using only such force as was necessary therefor, and in a manner not to endanger her personal safety and cause personal injury, but such removal should be at a place or station usual for taking on and discharging passengers.  If the evidence shows that plaintiff, Mary Casey, was so on the train without a pass or authority to ride free of charge, and refused to pay her fare when demanded by the conductor, and was removed from the train at such usual stopping-place without violence or rude conduct on the part of the conductor, and without personal indignity or injury, then defendant is not liable for damages, and you should find for defendant.  If, on the other hand, the evidence shows that said

Mary Casey was removed with unnecessary violence and rudeness or personal indignity toward her on the part of the conductor, or was removed from the car at a place not a usual stopping-place for the trains, then you will find for plaintiffs such amount in damages as the evidence shows plaintiffs to have sustained. In considering the actual damages, you can estimate the same by the injuries sustained by plaintiffs in their feelings and personal injuries and sufferings resulting from the unlawful act, if any such is proven, as well as the actual pecuniary loss to the plaintiffs; but you should not consider the pecuniary circumstances of plaintiff and defendant in estimating damages, but should deal with them as with individuals of equal wealth or poverty. If your finding be for plaintiffs, you should say by your verdict in what sum, and the sum should not be in excess of the amount claimed in plaintiffs' petition and amended petition. If you find that no wrong or injury was done to plaintiffs by defendant, your verdict should simply be for defendant."

*F. B. Sexton,* for appellant.

I. Neither the petition nor amended petition anywhere alleged that the conductor whose acts and conduct are complained of by plaintiffs and set forth as their ground of action, was an agent or servant of defendant.

II. The master (in this case the railway company sued as defendant) is not liable for the wanton, malicious, or willful acts of the servant, (the conductor,) unless they are committed in the course of the master's business while he (the servant) is acting within the scope of his authority or employment. There is no allegation in either the original or amended petition that the conductor was acting for the company, or that his acts, of which complaint is made, were within the scope of his authority or employment. Manifestly it was necessary, for the plaintiffs to recover, that these facts should be proven; if so, it was certainly necessary that they should be alleged. Without them the petitions were bad, and should have been so held. (Wood's

Law of Master and Servant, sec. 309, p. 590; Gillett *v.* Missouri Valley Railroad Co., 55 Mo., 315; 17 Am. Reps., 653; Hays *v.* Houston and Great Northern Railroad Co., 46 Tex., 280.)

III. We maintain that the damages found by the jury must be punitive, and therefore contrary to the law as given by the court, because there is no evidence whatever of actual damage sufficient to justify the enormous amount found by the jury.

IV. The court erred in refusing to grant a new trial, "because the testimony of plaintiffs' witness, Mary Casey, as to the manner she was put off defendant's train, is supported by no witness whatever, but is entirely overborne and contradicted by three disinterested and unimpeached witnesses, and ought not to be considered."

V. We maintain the court committed error in refusing a new trial, because the verdict is against law and evidence, and the duty of this court for these reasons is to reverse. We refer to the following: 1 Greenl. on Ev., sec. 13*a*; 1 Grah. & Wat. on New Trials, pp. 326, 327, 341, 350, 368; Silva *v.* Low, 1 Johns. Cas., p. 336; 3 Grah. & Wat. on New Trials, pp. 1305, 1311, 1312, 1325, 1330, 1369; Latham *v.* Selkirk, 11 Tex., 321; Chicago and Rock Island Railroad Co. *v.* Herring, 57 Ill., 59.

VI. The law (Paschal's Dig., art. 4892) does not provide that a passenger who refuses to pay his fare should be put off the cars at "a place or station usual for taking on and discharging passengers," but does provide that a "passenger refusing to pay his toll or fare may be put off the cars at any usual stopping-place which the conductor may select." The interpretation given by the court to the statute referred to was not correct.

That portion of the charge of the court to which we refer is found in a special instruction given by the court upon application of appellees, which is in the following words:

"If you believe from the evidence that the plaintiff, Mrs. Casey, was on defendant's train, as alleged, for the purpose of

going to Moore's Landing, in Bowie county, and if, on de-
mand of the conductor, Mrs. Casey refused to pay her fare,
then the conductor would have the right to put her off the
train; but the court charges you that the conductor would not
be allowed to put her off except at a usual stopping-place, and
the court instructs you that the usual stopping-place here men-
tioned means a usual stopping-place for the putting on and off
of passengers in the usual way; and· if the conductor ejected
plaintiff from the cars at a place other than a usual stopping-
place for the putting on and off of passengers, then the plain-
tiffs are entitled to recover."

VII. The court erred in its charge in this: that it did not
correctly, and with sufficient definiteness, define the difference
between punitive and actual damages, so that the jury could
know for which they might find; nor did it lay down with
sufficient distinctness the rule or measure of damages by which
they should have been governed.

The only damages, if any, which the plaintiffs were entitled
to recover, were actual damages.

Actual damages are such as naturally and directly resulted
from the act of defendant complained of by plaintiffs, and in-
clude loss of time, if any, from sickness, medical expenses,
and other necessary expenses actually incurred in restoration
to health, and necessary expenses incurred by plaintiff, Mary
Casey, in returning to Moore's Landing, if she was improperly
and unlawfully put off the train; but do not include any ele-
ments not capable of pecuniary valuation.

The court, in its charge, did not define to the jury distinctly
what were actual or compensatory, and what were punitory or
vindictive damages. (Sedg. on Meas. of Dam., pp. 35, 36,
648; 2 Greenl. on Ev., sec. 267; Field on Dam., pp. 70–73,
sec. 73; Hendrickson *v.* Kingsbury, 21 Iowa, 379; Field on
Dam., secs. 76–79; Fay *v.* Parker, 53 N. H., 342; Hunting-
don and Broadtop Railroad Co. *v.* Decker, Tex. Law Jour. for
Sept. 4, 1878, p. 36.)

*T. J. Campbell*, for appellees.

I. No exception was taken in the court below to the action of the court overruling appellant's general demurrer; no assignment of error as to overruling demurrer; and we submit that the demurrer was waived, or at least it cannot now be considered in this court. (Crosby *v.* Huston, 1 Tex., 225.) No exceptions being taken, appellees fairly presumed the demurrer was abandoned. Supposed defects could have been amended had they been pointed out. (Trammell *v.* Trammell, 20 Tex., 406, 416.)

II. The demurrer of appellant was not well taken. The averments are that the defendant was the owner of the train and was running it; that appellee, getting aboard the train, found a conductor thereon assuming and exercising all the offices of conductor, and that said conductor wrongfully put her off. The statute recognizes "the conductor of the train" as the officer authorized to expel passengers in proper cases. (Paschal's Dig., art. 4892.) As to the general authority of a conductor, see Kline *v.* C. P. R. R., 37 Cal., 408; 40 Ind., 37.

III. The supposed defects in appellees' petition are not the subject of a general demurrer, but, if defective at all, should have been shown by special exceptions. (Mayfield *v.* Averitt, 11 Tex., 141.) "Great liberality is indulged in favor of pleading to which special exception is not taken. General statements of fact and legal conclusions will not vitiate a plea on general demurrer." (Black *v.* Drury, 24 Tex., 289; Trammell *v.* Trammell, 20 Tex., 406, 416; Williams *v.* Wright, 20 Tex., 503; Dever *v.* Branch, 18 Tex., 616; Boynton *v.* Tidwell, 19 Tex., 121.)

IV. The supposed defects of appellees' pleadings were cured by the verdict. (McClellan *v.* The State, 22 Tex., 405, 106; De Witt *v.* Miller, 9 Tex., 245.)

V. We maintain that the damages found by the jury were not "punitive," but that, following the charge of the court, they were responsive to the charge and to the pleadings, and

cannot under the evidence be called "enormous." They were actual damages.

VI. The verdict of the jury is supported by the evidence.

VII. It being clear from the evidence of both Mrs. Casey and the conductor that the cars were in motion, or in the very act of starting, when he hurried her from the train, we maintain that the appellant is liable for all the injuries appellee sustained by reason thereof, whether she was on the train rightfully or not, and whether she was put off at a usual stopping-place or not. And the jury having passed upon the above facts, this court will not disturb their verdict. (Pennsylvania Railroad Co. *v.* Kilgore, 32 Penn. St., 292; Kline *v.* Central Pacific Railroad Co., 37 Cal., 400; Sanford *v.* Eighth-avenue Railroad Co., 23 N. Y., 343; L. L. and Gal. Railroad Co. *v.* Cook, 28 Kan., 261; 16 Am. Law Reg., (N. S.,) 575, Sept., 1877; Shear. & Red. on Neg., sec. 264*a*; 2 Red. on Railways, sec. 194.)

VIII. The court was right in charging that "such removal should be at a place or station usual for taking on and discharging passengers"; that the statute (Paschal's Dig., art. 4892) was treating of the subject of passengers, and could have reasonably meant nothing else but a place usual for putting on and off of passengers.

In Illinois, it is decided that passengers must be put off at a regular station. (C. B. and Q. Railroad Co. *v.* Parks, 18 Ill., 460.) "Where a passenger refuses to pay his fare, and informs the conductor he will pay if he will stop the train, and then refuses to do so: *Held*, This does not authorize the conductor to forcibly expel him at a place other than a regular station." (Chicago and Northwestern Railroad Co. *v.* Peacock, 48 Ill., 253; Stephen *v.* Smith, 29 Vt., (1857,) 160.)

IX. The question of damages was left fairly to the jury by the court,—more liberal, in fact, to the appellant than to the appellees; and this court ought not to disturb their verdict on the question of damages. This was a question for the jury, and they found nothing but actual damages.

The actual damages to Mrs. Casey are shown by her evidence and that of her husband, of injuries to her person, her feelings, and her sufferings. As to the rule of damages and the duty of the jury, their discretion, &c., see Pierce on Rail., 493; Redf. on Carriers, sec. 433; Shear. & Red. on Neg., sec. 606; 2 Greenl. Ev., (last ed.,) sec. 267, 268*a*; 2 Red. on Rail., 199.)

"Damages for bodily pain and suffering in such cases are not exemplary or punitory in their character, in any strict or proper sense of those terms." (Pennsylvania Railroad Co. *v.* Allen, 53 Penn. St., 276; Morse *v.* Auburn and Syracuse Railroad Co., 10 Barb., (N. Y.,) 621; Pittsburg, A. and M. Railroad Co. *v.* Donahue, 70 Penn. St., 119; Hays *v.* Houston and Great Northern Railroad Co., 46 Tex., 272; Ransom *v.* New York and Erie Railroad Co., 15 N. Y., (Smith,) 415.)

BONNER, ASSOCIATE JUSTICE.—It is contended by appellant (defendant below) that the action of the court in overruling its general demurrer was such fundamental error, apparent upon the record, as calls for a reversal of the judgment.

Defendant neither excepted to this ruling nor assigned it as error.

The plaintiffs averred substantially that the defendant-company was the owner of the train; was running it as common carriers of freight and passengers; that, with its consent, Mrs. Casey entered the car as a passenger to Moore's Landing; that the acting conductor in charge of the train wrongfully put her off at an improper place, to her damage.

Under these allegations, it is to be presumed that the conductor was the agent of the company, as such an officer is expressly recognized by our statute, with authority in a proper case and in a proper manner to eject passengers from the train. (Paschal's Dig., art. 4892.)

In our opinion, the allegations in the pleadings were sufficient, on general demurrer, to sustain plaintiffs' cause of action.

The first, second, third, fourth, and fifth errors assigned present substantially the question that the testimony was not sufficient to sustain the verdict.

The testimony was conflicting, with a preponderance in favor of defendant. As presented by the record, it would seem that the learned judge presiding would have been authorized to have granted a new trial.

As the jury and the court below have much better facilities to determine what weight should be given to the testimony than this court, under long-established rules of practice, we do not deem it proper, where there is conflicting testimony, unless in a clear case of error, to reverse a judgment upon a verdict approved below.

This rule, however, as to verdicts, does not ·apply with the same strictness to trials in the District Courts; and we deem it appropriate to say that the right to a new trial in a proper case is a valuable one given by law, and should be fearlessly enforced by presiding judges, as otherwise the ends of justice may often not be attained.

The sixth error assigned is, that " the court erred in its charge to the jury in this: that in defining the place where the conductor might have removed Mrs. Casey, the court said ' such removal should be at a place or station usual for taking on and discharging passengers,' when the statute does not so define the place where a conductor may lawfully put off a passenger who refuses to pay fare."

Our statute (Paschal's Dig., art. 4892) provides that " if any passenger shall refuse to pay his fare or toll, it shall be lawful for the conductor of the train and the servants of the corporation to put him out of the cars at any usual stopping - place which the conductor may select."

The place selected in this instance was at a water-tank, and the testimony was conflicting as to whether passengers usually entered and left the train at this point.

We are of opinion, that by the words " any usual stopping-place," in the above statute, is meant either a regular station

or any other place which the company expressly, by public notice or otherwise, or impliedly by user for such purpose, had designated as a proper place for passengers to get on or off its trains, and where they would, in consequence thereof, have the right to demand the exercise of this privilege.

It will be seen that these words are used in this latter sense in the next succeeding article, (Paschal's Dig., art. 4893,) which provides that the company shall furnish sufficient accommodations for the transportation, at regular times, of such passengers as shall, within a reasonable time previously thereto, " offer or be offered for transportation at the place of starting, and the junctions of other railroads, and at sidings and stopping-places established for receiving and discharging way passengers," &c.    (Rev. Stats., art. 4226.)

The statute under consideration is intended for the protection both of the company and of passengers.

Persons who designedly enter the cars not provided with either a ticket, pass, or money, with the improper intent to ride thereupon, when not authorized either by law or the regulations of the company, may be justly treated as trespassers.

If the rights of none but this class were to be considered, we might be inclined to give the statute a more strict construction.    But cases can readily be supposed in which persons thus enter the cars under a reasonably mistaken view of their rights. To permit the company to eject such persons, who, perhaps, may be aged, infirm, or women and children, at a usual stopping-place for taking on wood or water only, which may be distant from accommodations or assistance, possibly at night or in inclement weather, would be a great hardship, to prevent which was doubtless one of the principal objects of the statute.

The seventh error assigned is, that " the court erred in its charge in this: that it did not correctly, and with sufficient definiteness, define the difference between punitive and actual damages, so that the jury could know for which they might find; nor did it lay down with sufficient distinctness the rule

or measure of damages by which they should have been governed."

The charge embraced the subject of both actual and exemplary damages, and purported to lay down some measure of damages, and although it may be objectionable in the particulars indicated by the assignment, yet, under the practice of this court in civil cases, this would not be sufficient to reverse the judgment, as the attention of the court was not called to the alleged error, either by exception or by asking a proper charge.

The ninth error assigned is, that "the court erred in refusing a new trial, because the verdict of the jury is unjust as well as excessive, and because it is without evidence to support it."

We are not prepared to say that this alleged error is well taken. The legal effect of the allegations in the pleadings would have authorized a verdict for the amount of actual damages found; and the jury, under the charge of the court as applied to the evidence, were virtually restricted to actual damages.

It is the proper practice in cases of this character to instruct the jury to find separate verdicts, one as to the actual and the other as to the exemplary damages.

But the failure to do this, when not excepted to nor the proper instruction asked, would not, of itself, be sufficient to reverse the judgment.

Although there was no direct evidence of the pecuniary value of the alleged damages, yet as to some of the grounds upon which they were sought, the physical pain, suffering, and anguish of the wife, they were not capable of being estimated by any positive money standard, and if the facts were true as found by the jury, we cannot say that they were so excessive as to authorize us to reverse the judgment.

The tenth alleged error—not assigned, but asked to be considered, because fundamental and apparent upon the record—that the husband was permitted to testify in behalf of the wife, if error, cannot be taken advantage of for the first time in this

court. The testimony was admitted without objection, and no motion made to exclude.

We find no such error apparent of record as would authorize us to reverse the judgment of the court below, and the same is accordingly affirmed.

AFFIRMED.