CLARK and DOUGLAS, JJ., dissenting.
At the close of the plaintiffs' evidence the defendant's motion for judgment as of nonsuit was allowed, and the plaintiff appealed.
The gravamen of the action — indeed, the only cause of action set out in the plaintiffs' complaint — was the alleged reckless, careless and negligent conduct on the part of the defendant's conductor in carrying her past and beyond the point to which she had bought her ticket, and putting her off in the rain and in an unsuitable place. The exact language of the complaint in respect to the alleged negligence is as follows: "That the conductor on said train recklessly, carelessly, negligently and unlawfully, and in absolute disregard of his duties (305) to her, carried said plaintiff past and beyond her destination about three-fourths of a mile, and despite remonstrance on her part, stopped the train and put off said plaintiff and her children in a low, wet and swampy place, and in the midst of a steady rain and at a considerable distance from any shelter or other protection from said rain, and where it was neither likely nor probable that any one would meet said plaintiff and her children; all of which was done to the serious inconvenience, annoyance, damage and injury to said plaintiff and children to the amount of $10,000."
There was no evidence that she suffered any bodily harm, or that she was put to any expense in reaching her home from the point at which the conductor helped her to alight. It is true that she said she got wet and was laid up for several days, and was exhausted and very much fatigued; but her physician, who prescribed for her that very morning, testified that for some time she had been suffering from nervous prostration and functional disorder of the heart, and that her condition was such that she would have been sick anyway. Just immediately before the occurrence, a summer thunderstorm was approaching, and all of her evidence showed that she would have become wet from the rain if she had stopped at the point where the conductor had agreed to stop the cars for her to get off. And besides, there was no house or building at the agreed point of her destination, and no one awaiting her upon her arrival. In fact, the plaintiff not only did not claim in her complaint, as we have seen, any damages other than such as were alleged to have arisen by reason of the conductor having put her off at the place and in the manner he did, but in her testimony also, in answer to a question on her cross-examination, she said: "I sued for damages for being put off out there where there was no one to meet me and away from any house or protection of any kind, and in the rain." It is significant, (306) too, in this connection, that although she testified that she had consulted counsel with reference to bringing suit in this matter, the summons was not issued until the March following the time of the *Page 212 
occurrence — 4 July, 1899. She testified herself, also: "I was not put to any additional financial expense by reason of being put off at Cameron instead of at Stewarts." In the course of the trial the plaintiff undertook to show that she suffered mental suffering, and she was asked this question by her counsel: "State whether or not there was any mental suffering by reason of the treatment of the defendant?" And his Honor very properly, in our opinion, refused to allow the question. We do not intend to extend to that extent the doctrine of mental anguish. So far as we now recall, that doctrine has only been allowed in this Court in cases where there has been personal injury, except in cases where telegraph companies have been negligent in their failure to send and deliver messages concerning personal or domestic affairs, such as the illness or death or something equally as serious, between persons who are near of kin.
Neither do we think that there was any evidence tending to prove that the defendant's conductor, in his conduct, did or said anything which would justify the plaintiff's attempt to recover as for punitive or exemplary damages. Dr. McKenzie, a witness for the plaintiff, testified that the conductor was considered "a very gentlemanly conductor." On the present occasion he told the plaintiff that he was unable to stop the train, a long freight train with one passenger coach in the rear, at the point he had agreed to stop for her benefit; that he was unable to communicate with the engineer the signal to stop. He gathered together her parcels or bundles, and, in her own language, "helped me and the children off the train by lending his hand to us, and when we got to the end of (307) the car Captain Lockamay went out ahead of us." She also said that the conductor stood at the end of the car on the ground and remained there during the entire time the train was at Cameron, and that he was talking with her some of the time. It was also in evidence that very near the point where the cars were stopped were residences and homes, and in one of them (Mr. Cameron's) the plaintiff and her children found shelter and protection.
So it appears from the evidence that while the conductor may not have measured up to the standard recognized by the plaintiff in point of politeness, he yet in law fulfilled every duty imposed upon him as conductor of the defendant's train in the acts of helping her to alight from the car and in attending upon her after she alighted and before the train moved off.
If it were admitted that the plaintiff was wrongfully put off the train, she would be entitled to recover only the actual damages that she would have sustained therefrom, and if the act was accompanied with unnecessary force or other circumstances calculated to humiliate her, or to wound her pride, or with a reckless indifference to consequences, insult or *Page 213 
rudeness, showing malice, such damages might have been allowed by the jury as they should think were warranted by the facts in the way of punitive damages. Rose v. R. R., 106 N.C. 168; Hansley v. R. R.,117 N.C. 565, 32 L.R.A., 543, 53 Am. St., 600. The evidence discloses no such conduct on the part of the conductor. It is true that the plaintiff said that "the conductor treated me in a rough, indifferent manner, was mad and spoke in a harsh tone," but that evidence, when taken together with what the conductor actually did under all the surroundings, makes it perfectly clear to us that what she complained of was a matter of taste and not of substance. In the confusion of the storm, the downpour of rain, the fright of the children, probably, and her own weak and nervous condition, combined to cause her to take an extreme view of the situation and to do the conductor an injustice in her censure of (308) him.
No error.