GEORGE SAWYER v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 15 September, 1915.)

**1. Carriers—Carriage of Passengers—Contract of Carriage—Performance.**

Where a railroad sold transportation between two points, it being necessary for the passenger to change, for the performance of the road's contract, the conductor, after taking up the passenger's ticket, should return it to him before reaching the changing point, or give him something in place thereof that the new conductor would accept for passage to destination.

**2. Carriers—Carriage of Passengers—Action for Ejection—Contributory Negligence.**

Where passenger bought a ticket to a point to reach which it was necessary to change, if the company, in the passenger's action for ejection from the train because he had no ticket acceptable on the train to which he changed, claimed that the passenger was guilty of contributory negligence in not having demanded the return of his ticket from the conductor on the first train, such charge should have been pleaded as contributory negligence, and issue tendered.

**3. Carriers—Carriage of Passengers—Ejection—Negligence of Conductor.**

Where plaintiff purchased through transportation to a destination to reach which it was necessary to change, and the conductor on the first train neglected to return passenger's ticket, he having no money, and, when the conductor of the second train asked for his fare, vainly attempted to borrow from men who had been on the first train with him, it was negligence on the conductor's part not to have satisfied himself by inquiring of such men whether plaintiff had been on the train with them prior to reaching the changing point, before ejecting plaintiff.

**4. Carriers—Carriage of Passengers—Wrongful Ejection—Payment of Fare—Duty of Passenger.**

Under Revisal 1905, sec. 2611, providing that every railroad corporation shall transport passengers on due payment of the fare legally authorized for the trip, where a passenger is about to be wrongfully ejected from a train, having paid his fare thereon, but being unable to produce his ticket, it is not incumbent on him, by paying money which the conductor has no right to exact, to avoid ejection from the train, as he is not required to buy again his right to remain on the train to his destination.

**5. Carriers—Carriage of Passengers—Refusal of Double Fare—Rights of Parties.**

Where a railroad passenger cannot produce a ticket on the conductor's demand, the road and the passenger can each stand upon their rights. The road can eject the passenger, subject to liability if he has paid his fare, and the passenger to suffer ejection, subject to his right to recover if it was wrongful.

**6. Carriers—Carriage of Passengers—Wrongful Ejection—Right of Action— Statute.**

Under Revisal 1905, sec. 2611, providing that every railroad shall start and run their cars for the transportation of passengers, and shall take, transport, and discharge such passengers at, from, and to usual stopping places on due payment of the fare legally authorized, and shall be liable to the party aggrieved in an action for damages for any neglect or refusal in the premises, plaintiff passenger, ejected from train of defendant road for failure to pay again fare which he had paid once upon purchasing ticket, had a right of action.

**7. Carriers—Wrongful Ejection—Damages.**

Where a railroad wrongfully ejected a passenger at night in a desolate country, without money or friends, forcing him to walk 30 miles to his destination, he was entitled to recover for the humiliation and wrong done him by his ejection and the damage caused by his enforced walk without food.

APPEAL by defendant from *Justice, J.,* at January Term, 1915, of PASQUOTANK.

Judgment for plaintiff, and defendant appeals.

*I. M. Meekins for plaintiff.*
*J. Kenyon Wilson for defendant.*

CLARK, C. J. This is an action for damages for ejection from defendant's train. The plaintiff was a passenger thereon, 24 March, 1913, having purchased a ticket from Norfolk, Va., to New Bern, N. C. At that time the defendant required passengers from Norfolk to New Bern to change at Chocowinity, where another train of defendant took passengers to New Bern; the original train from Norfolk going on to Raleigh.

The facts as found by the jury are that on the night in question, soon after the train pulled out of the station at Norfolk, the defendant's conductor took up plaintiff's ticket, but failed to return the same to him, giving him the usual conductor's check. At Chocowinity the conductor showed him the train he should take for New Bern, but did not return his ticket. The plaintiff was an inexperienced traveler, having traveled only between Pantego and Norfolk. He knew nothing about the defendant's custom as to passengers transferring at

Chocowinity, nor that the conductor's check would not be good beyond that point. After leaving Chocowinity the new conductor demanded his ticket and refused to take the check. The defendant explained what had happened, and endeavored to borrow the necessary fare from two men near by, who had been on the train with him before he reached Chocowinity, but was unable to do so. Thereupon the conductor put him off, between 2 and 3 o'clock at night on 25 March, 1913, at Frederick, N. C. There were no lights in the station at Frederick, the season was blustering and inclement, the plaintiff did not have any money to secure lodging or food and no means to protect himself from attack, and was a stranger at that place. He then walked to New Bern, a distance of 30 miles, reaching there at 5 p. m. The walk produced great blisters and footsores on plaintiff's feet, and caused his ankles and feet to swell badly, and for some time he was laid up and unable to work. The court properly told the jury that if they found that the conductor returned the ticket to the plaintiff, to answer the issues "No."

The conductor having taken up the plaintiff's ticket, it was incumbent upon him to return the ticket to the plaintiff at or before reaching Chocowinity, or have given him something in lieu thereof that the new conductor would accept for the passage to New Bern, in accordance with the contract expressed by the ticket. The defendant's counsel suggests that the plaintiff should have asked for the return of the ticket, and that it was a "frame up" on his part not to do so. But there is no evidence in the record that the plaintiff knew that the conductor had erred in not returning his ticket, or that his check would not be good beyond Chocowinity. If there had been grounds for such charge, it should have been pleaded as contributory negligence, and an issue tendered in that view.

The defendant further insists that the plaintiff should have paid his fare when called upon. He showed that he had no money, and that he tried in vain to borrow from two other men who had been on the train with him before arriving at Chocowinity. It was negligence on the part of the conductor not to have satisfied himself, by inquiring of those men then and there whether the plaintiff had been on the train with them before reaching Chocowinity, and thus have satisfied himself of the correctness of the plaintiff's statement.

Besides, when a passenger is about to be wrongfully ejected from the train, it is not incumbent upon him to prevent the wrong by paying money which the carrier's servant has no right to exact. He is not required to submit to imposition, or to buy again his right to remain on the train to his destination. Revisal, sec. 2611. If this were not so, carriers would be above the law, because there could never be punishment exacted for a wrongful violation of the contract of carriage. If

it be said that the passenger could pay the money and recover it back, this would not right the wrong, because he could not afford to pay counsel's fees and bear the expenses of litigation for so small a sum. It would be fairer to say that, in cases of doubt, the carrier should carry the passenger to his destination and sue him to recover the fare which he should have paid. But neither is required to do this. Each party can stand upon his rights, if he so chooses. This has been often held. *Harvey v. R. R.*, 153 N. C., 575, and cases there cited. The statute (Rev., sec. 2611) confers the right of action.

"Where one has been injured by the wrongful conduct of another, he must do what he can to avoid or lessen the effects of the wrong. But this principle does not apply till after the contract has been broken or the tort has been committed. It•does not deprive the party of the right to insist on his legal rights." *Harvey v. R. R., supra.* It does not appear that after the plaintiff was ejected he failed to do anything he could in reason to lessen the damages. He was a stranger, at night, in a desolate country, without money or friends, and he set out to walk to his destination at New Bern. He was entitled to compensation for the humiliation and wrong done him by the ejection and for the substantial damages sustained by his enforced walk, without food, to New Bern. The duties and liabilities of carriers in such cases have been stated fully, in accordance with the above views, in *Hutchinson, v. R. R.*, 140 N. C., 124; *Williams v. R. R.*, 144 N. C., 503; *Mace v. R. R.*, 151 N. C., 404; *Harvey v. R. R.*, 153 N. C., 567; *Elliott v. R. R.*, 166 N. C., 481, and *Hallman v. R. R.*, 169 N. C., 130. The only case to the contrary (*Smith v. R. R.*, 130 N. C., 304) was expressly overruled in *Hutchinson v. R. R.*, 140 N. C., 127, and *Williams v. R. R.*, 144 N. C., 503.

No error.