EUGENE W. McNAIRY v. NORFOLK AND WESTERN RAILROAD COMPANY.

(Filed 15 November, 1916.)

**1. Carriers of Passengers—Mileage Exchange—Tickets.**

It is the duty of a conductor on a passenger train to accept the mileage of a person traveling thereon when the railroad company has not afforded him time to get it exchanged for a ticket at its station.

**2. Same—Ejection from Train—Statutes—Usual Stops—Flag Stations.**

A place along a railroad company's track is not a usual stopping place within the meaning of Revisal, sec. 2629, forbidding the company to put off passengers except "at usual stopping place or dwelling," when it is merely a flag station, with only a side-track, without shelter, and the nearest dwelling three-quarters of a mile away; and where one traveling on the train has been put off at such place at 9 o'clock in the night for failure to exchange his mileage for a ticket, and was informed by the conductor that it was "a rather poor place to spend the night," it does not preclude his recovery, for the company's violation of the statute, that he again boarded the train and complied with the conductor's demand in paying the additional charge required of those who have no ticket.

**3. Same—Excessive Force—Punitive Damages—Trials — Evidence — Mental Anguish.**

Where a traveler is ejected from a passenger train in violation of his rights, at night, at a place without shelter, and the evidence tends to show that the conductor, with the assistance of the flagman, used violence in taking him from the seat in the presence of the passengers; that the conductor's actions evinced anger; that the traveler again boarded the train after being ejected, whereupon the conductor told him that he would kick him off if he did not pay the cash fare, in consequence of which the traveler paid the price and remained on the train: *Held*, evidence of unnecessary force on the part of the conductor, and sufficient to sustain a verdict awarding exemplary damages, and damages for humiliation and injury to feelings.

**4. Carriers of Passengers—Ejection from Train—Trials—Questions for Jury.**

The question whether the conductor of a train used unnecessary force in ejecting a passenger from the train is one for the jury upon conflicting evidence.

**5. Carriers of Passengers—Wrongful Ejection—Cash Fare—Damages.**

Where a conductor refuses to pull the mileage of a passenger, demands the cash fare, and, upon refusal of the passenger to pay, wrongfully ejects him, it is no defense to the company to avoid the payment of actual or exemplary damages that, upon the payment of the small amount of the cash fare, the passenger could have avoided the entire injury.

**6. Appeal and Error—Assignments of Error—Rules of Court.**

This cause being tried under one issue, without exception taken, the assignment of error that other issues should have been submitted is not in compliance with the rules of Court regulating appeals.

BROWN, J., dissenting; WALKER, J., concurring in the dissenting opinion.

APPEAL by defendant from *Cline, J.,* at March Term, 1916, of GUILFORD.

*William P. Bynum and R. C. Strudwick for plaintiff.*
*J. C. Buxton and King & Kimball for defendant.*

CLARK, C. J. The plaintiff, the holder of a mileage book, obtained in exchange a ticket over the defendant's train from Stoneville, N. C., to Madison, N. C. On arrival at the latter place at 8 :30 p. m. he got off the train, but was informed by the agent at the hotel at which he proposed to spend the night that the hotel could not accommodate him. He then determined to take the train and go on to Walnut Cove to spend the night. The train stopped at Madison only about one or two minutes, and the plaintiff testified that the ticket agent was not at the office, but was engaged in transferring baggage. The plaintiff remarked to the conductor, who was standing near him, that he would have to go on with him to Walnut Cove. The conductor replied, "If you are going on with me, get aboard," which the plaintiff did.

There is evidence tending to show that the ticket agent was at his office that night, and that it was the assistant ticket agent who was transferring baggage.

The court charged the jury that if the agent was on duty that night, and if the plaintiff had applied for a ticket he could have gotten one, then the conductor had the right to put him off if at a station or a house and in a proper manner. It does not appear how the jury found the conflict of testimony upon this point. If the agent was not in his office, or the plaintiff did not have time to get a ticket, then it was the duty of the conductor under our statute to take his mileage, for, under the statute, if opportunity is not afforded the passenger to exchange his mileage for a ticket, the mileage shall be accepted by the conductor.

If, however, the plaintiff had time and opportunity at Madison to exchange his mileage for a ticket, the plaintiff relies upon two other circumstances to sustain his verdict. Revisal, 2629, forbids putting off a passenger except "at a usual stopping place or near a dwelling-house," and the place where the plaintiff was put off the train was not a usual stopping place on the defendant's road, but merely a flag station. There was no shelter nor station, nothing but a side-track, and the nearest dwelling was three-quarters of a mile from this siding. The plaintiff testifies that he was put off at 9 p. m. at night, as must have been the case, since he left Madison at 8:30 p. m.; that he was very thinly dressed, wore a Palm Beach suit, with very thin underwear, and the conductor told him at the time that it was "a rather poor place to spend the night." There was no one living there. It did not atone for this violation of law that the plaintiff again got back on the train, paying his fare at the higher rate and with the additional charge required of one who has no ticket.

The plaintiff testified that he had been over the road seven times, and the train had stopped there only once, and that when it was flagged. The court left it to the jury to find whether or not it was a usual stopping place where the train was accustomed to stop for the discharge of passengers, and if it was not and there was no house near by, the jury could answer the first issue in the affirmative. That upon the uncontradicted testimony the defendant was wrongfully ejected is settled by the plain words of the statute as construed in *Mott v. R. R.,* 164 N. C., 367, which held that in such case the plaintiff was entitled to recover. There are numerous cases elsewhere exactly in point, among them *R. R. v. Flagg,* 43 Ill., 364, 82 Am. Dec., 133, in which it was held that "A water tank, although the train ordinarily stopped there, was not a usual stopping place" under a statute like ours. To the same purport, *R. R. v. Parks,* 18 Ill., 460, 68 Am. Dec., 565; *R. R. v. Casey,* 52 Texas, 122.

The plaintiff's further ground of complaint is that he was ejected with unnecessary force and in a manner intensely humiliating to him. The plaintiff's evidence on this point was that he presented his mileage book to the conductor and explained to him why he did not get a ticket to Madison—because the agent was not at his office, and he did not have time to get a ticket. He proposed to the conductor that he could pull the mileage and get the ticket at Madison the next day for the trip from Madison to Walnut Cove. The conductor refused to take the mileage and demanded the cash fare of 50 cents, which was a bonus of 15 cents, besides 2½ cents per mile, whereas the mileage book was at the rate of 2 cents per mile. He testified that when the

conductor refused to take the mileage or his proposition to get the ticket in exchange for the mileage, the conductor called up the flagman and pulled the bell cord for the train to stop; that when the flagman came up and the witness was explaining the matter to him, "the conductor came up and reached down in witness's seat with both hands and grabbed him by the arm and jerked him into the aisle with such violence that both came near falling into the lap of the lady sitting opposite; the witness then said to the conductor: 'I think I know my rights in this case. It is not necessary for you to get rough. All you have got to do is to set me off this train.' The conductor continued pulling the witness down the aisle; that as he went down the aisle, the conductor had hold of one arm and the flagman either with his hand on the shoulder of the witness or his other arm, and led witness out of the car; that they put the witness off in the woods out there some distance from Madison, the conductor remarking that it was rather a poor place to spend the night; that there was nobody living there; the plaintiff was very thinly dressed and there was no house or shelter —nothing but a side-track in the woods, on the bank of a river, after 9 o'clock at night; and as the train pulled out the witness ran ahead and got on the rear steps of the coach ahead, just adjoining the one from which he had been ejected; the conductor immediately ran up the steps and ran around and violently grabbed the witness as he went up the steps; that the conductor, shaking in great wrath, yelled at witness that he would kick him off, or put him off, of the train unless he paid the cash fare; the witness went into the coach and the conductor came in and demanded a cash fare of 50 cents, which the plaintiff paid and took his receipt from the conductor, who was all in a tremble so that it took him some time to write a receipt; that he was intensely humiliated by being yanked out of the train before some twenty-five people, the train being brilliantly lighted." There is evidence from the defendant in contradiction of some of the circumstances concerning the manner of ejectment; but that was a matter for the jury, and the plaintiff's evidence must be taken as true on this motion to nonsuit. Probably there is no one who will contend that such conduct on the part of the conductor was justifiable nor that the plaintiff was not entitled to recover for the humiliation and wrong inflicted upon him if these were the facts. But if there is, that school of thought had no representatives on this jury. Whether the ejection took place in that mode was properly submitted to the jury.

The court charged on this point that if the conductor had the right to eject the plaintiff, he had the "right to use as much force as was necessary to accomplish the ultimate purpose to remove him, if he had not got a ticket, from the train. Now, you cannot weigh that in

golden scales. You cannot say he did use exactly as much force as is necessary, or he did exceed it by the smallest grain. I do not think that would be a reasonable interpretation, because a man, if it is necessary for him to lift a passenger up or drag him along, probably could not measure to an exact nicety just how much force it would require; but this word 'unnecessary force' means here that it should be apparent to you, as triers of this case, that the conductor exceeded the force that was required; that he acted in a manner which showed the exercise in that sense of unnecessary force; that he did more than you could see and will say that it was necessary for him to have done; that he exceeded the rights which the statute gives him to do in such things as are reasonably necessary to accomplish the ultimate object." The question of unnecessary force in the ejection of passengers is one of fact for the jury, and the defendant cannot complain of the charge of the court in this respect. *Knowles v. R. R.*, 102 N. C., 59; 2 Hutchison on Carriers (3 Ed.), sec. 1084.

The charge of the court was not unfavorable to the defendant, for he held as a matter of law (which was a matter of fact to be decided by the jury) that the plaintiff was not excused in not getting a ticket at Madison, though he testified that the agent was not in his office and that he was not afforded time to get a ticket after he told the conductor he intended to go on that night. The court instructed the jury that the conductor was entitled to demand 50 cents cash fare, and left the case upon the two questions as to whether the place of ejection was such as was forbidden by the statute and whether or not excessive force was used. The court instructed the jury that if the plaintiff was wrongfully ejected from the train he "would be entitled by way of actual or compensatory damages to recover such amount as the jury should find would reasonably and justly compensate him for any physical injury or inconvenience, any mental suffering or humiliation which he endured because of the result of what you find, if any, to be the wrongful act done towards him by the defendant company." The court further charged: "In addition to that, gentlemen, to entitle a passenger to punitive damages his wrongful expulsion from the train must be attended by such circumstances as to show rudeness, insult, aggravating circumstances calculated to humiliate the passenger. Exemplary, punitive, or vindictive damages are given to vindicate the right, punish the wrong, and to set an example before others who may be prone to the commission of like offenses. If the defendant has acted wantonly or with criminal or reckless indifference, or has been guilty of intentional or willful violation of the plaintiff's rights, the jury could award such damages in their sound discretion." In these instructions we find nothing of which the defendant can complain.

The defendant contends that the plaintiff could have avoided being put off the train by paying the small sum of 50 cents. The plaintiff contends that it is "the other way around," and that the defendant could have avoided this action by not putting the plaintiff off at a siding in the woods at 9 o'clock at night, three-quarters of a mile from the nearest dwelling, and especially by not putting him off with violence and unnecessary force and in a manner humiliating to him before a car full of passengers.

In Sawyer v. R. R., 171 N. C., 15, this point is discussed, the Court saying: "When a passenger is about to be wrongfully ejected from a train it is not incumbent upon him to prevent the wrong by paying money which the carrier's servant has no right to exact. He is not required to submit to imposition or to buy again his right to remain on the train to his destination, Revisal, 2611. If this were not so, carriers would be above the law, because there could never be punishment exacted for the wrongful violation of the contract of carriage. If it be said that the passenger could pay the money, and recover it back, this would not right the wrong, because he could not afford to pay counsel fees and bear the expenses of litigation for so small a sum. It would be fairer to say that, in cases of doubt, the carrier should carry the passenger to his destination, and sue him to recover the fare which he should have paid. But neither is required to do this. Each party can stand upon his rights, if he so chooses. This has been often held. Harvey v. R. R., 153 N. C., 567, and cases there cited. Revisal, 2611, confers the right of action."

This case was submitted to the jury upon the issue, "Was the plaintiff wrongfully ejected from the train of the defendant?" That issue was submitted to the jury solely upon the evidence whether defendant was put out at a place forbidden by law and by the exercise of excessive force.

There was no prayer to submit this as two issues, nor is there any assignment of error in that regard. The assignments of error were all held insufficient by this Court in accordance with our uniform decisions, some of them at this Court, except only the assignment for the refusal of the motion to nonsuit. It being admitted in the dissenting opinion that there was some evidence to go to the jury upon the issue as framed, there is

No error.

BROWN, J., dissenting: The following issues were submitted to the jury:

1. Was the plaintiff wrongfully ejected from the train of the defendant, as alleged in the complaint? Answer: "Yes."

2. What damages, if any, is the plaintiff entitled to recover of the defendant?    Answer: "$1,000."

I am of opinion that his Honor erred in not giving the first of the defendant's prayers for instruction. I am further of opinion that his Honor should have instructed the jury to answer the first issue "No."

The evidence is that the plaintiff had a mileage book on which he had taken a ticket to Madison. When he got to Madison he was told at the car steps that there were no accommodations to be had, and he concluded to go on to Walnut Cove. He made no effort whatever to get another ticket on his mileage book. He did not ask the conductor for time to get a ticket, and he did not go to the ticket office. The train stayed at Madison for a very short time. When the conductor came around for tickets, the plaintiff presented his mileage book and insisted that the conductor should pass him on it.

It is well settled that a mileage book is not good for passage unless the purchaser complies with its conditions. The conductor demanded 35 cents fare to Walnut Cove. The judge instructed the jury that the plaintiff was not rightfully a passenger upon the train at the time in question, and that the conductor was not required to take out of the plaintiff's mileage book the mileage equal to the distance between Madison and Walnut Cove. His Honor should have instructed the jury, in view of that ruling, that upon the plaintiff's own evidence they should answer the first issue "No"; that he was not wrongfully ejected.

I admit that a passenger may be rightfully ejected from a train and at the same time recover damages for the manner in which that ejection was accomplished, but no issue embodying that principle was tendered by the plaintiff or submitted to the jury in this case.

His Honor instructed the jury under the second issue that if plaintiff was wrongfully ejected from the train, the plaintiff would be entitled by way of actual or compensatory damages to recover such amount as the jury said would reasonably compensate him for any physical injury or inconvenience, mental suffering or humiliation which he endured by reason of such ejection. This was error, because his Honor had already instructed the jury that the plaintiff was wrongfully on the train; that he was not rightfully a passenger, and that the conductor had a right to eject him. Consequently, whatever humiliation the plaintiff suffered by reason of such ejection was the result of the plaintiff's own misconduct. It was his duty to pay his fare when the conductor demanded it, and he would have been saved any humiliation and mortification such as he complains of. Therefore, I say that his Honor injected an element of damage for which the plaintiff has no right to recover.

I admit that according to the plaintiff's own testimony there is some evidence of unnecessary force and violence in ejecting him. Inasmuch as the plaintiff was rightfully ejected, this is the only element of damage which should be considered by the jury; that is to say, whatever damage ensued from such excessive force.

I am of opinion that an issue should have been submitted as follows: Notwithstanding that the plaintiff was rightfully ejected from the train, was excessive force and violence used in such ejection? It was the plaintiff's duty to tender such an issue. All the evidence in this case, except that of the plaintiff himself, shows conclusively that no more force was applied by the conductor than was reasonably necessary to eject a man who was resisting such ejection. It is a very easy matter for the plaintiff to say that the conductor jerked him. It is difficult to get a man out of a seat when he is resisting without jerking him. There is not one scintilla of evidence that the plaintiff was in the least degree injured in any way.

The contention that the conductor violated the statute and put the plaintiff off at an unsuitable place should not have been submitted to the jury as an element of damage. I do not say this because Sharp's siding was a suitable place for the plaintiff to be compelled to spend the night, but for the reason that the plaintiff himself testifies that he immediately got back on the train and paid his fare to Walnut Cove and spent the night there. The wrong which the statute was intended to remedy was putting a person off at some practically uninhabitable place where no lodgings could be had and compelling him to stay there an indefinite time. It was not intended to cover a case where a passenger is rightfully ejected, but gets back on the train immediately and pays his fare and goes on to the next station.

I admit that this Court has decided that it will not interfere with the damages, but leave it to the judges of the Superior Court to set aside the verdicts when they are excessive. A perusal of the facts in this case will show that the plaintiff was in the wrong from the beginning to the end, and that the verdict rendered by the jury was grossly excessive, assuming that the conductor did exercise a little more force than was necessary. In this case I am convinced that all the force exercised by the conductor was brought about by the plaintiff's resistance. There is no evidence that the conductor used a harsh word or indulged in any abusive epithets. He and the flagman dragged or pulled the plaintiff down the aisle because the plaintiff forced them to do it.

It is suggested in the opinion of the Court that the only assignment of error properly made is the one relating to the nonsuit, and that,

therefore, the Court will not consider the others. I do not agree with the Court in that particular.

The third assignment of error is in these words: "The action of his Honor in declining to give to the jury defendant's special prayer No. 1 is noted in defendant's third exception, page 75." By reference to page 75, it is seen that prayer No. 1 covers a page and a half of the record. I know of no decision of this Court which requires that the prayers for instruction shall be copied in the assignments of error. In these assignments the number of the prayer and the page of the record is given. In my opinion this is all that can be reasonably required of an appellant in respect to the prayers for instruction.

If it is required to reprint them entirely in the assignment of error, it is not only a work of supererogation, but it makes the record extremely bulky and largely increases the expense of printing. All of our decisions, as I understand them, refer to assignments of error relating to the evidence where none of it is set out, no page of the record is given, and the Court would be left to grope through the record and find the exceptions without assistance.

WALKER, J., concurs in this opinion.